MONROE, Respondent, v. HERRINGTON, Appellant.

St. Louis Court of Appeals, February 21, 1905.

1. **LIMITATIONS OF ACTIONS:** Note: Endorser: Payments by Maker. The payments by the maker of a note do not defer the running of the Statute of Limitations in favor of the endorser of the note, since the cause of action against him is based on his independent contract created by the endorsement.

2. ———: ———: Written Acknowledgment or Debt. A letter written by the endorser of a note which related to the note, did not postpone the running of the Statute of Limitations, in the absence of an unequivocal acknowledgment of the debt.

3. ———: ———: Estoppel. One liable on a note who procures an extension of time by a positive agreement to waive the defense of the Statute of Limitations, is estopped to set it up when sued on the note.

4. ———: ———: Agreement to Pay. But a verbal agreement by the endorser to pay whatever remains due after the holder of the note should exhaust his remedy against the deceased maker's estate, on account of which the holder, at the endorser's request, forebore to sue until the statute had run, was a contract within the words of the Statute of Frauds and was not binding upon the endorser.

5. ———: ———: Estoppel. Nor would the endorser, when sued on the note, be estopped to assert the Statute of Limitations, because to allow an estoppel in such a case would be an evasion of the statute,

Appeal from Jefferson Circuit Court.—*Hon. Frank R. Dearing,* Judge.

REVERSED.

*Sam Byrns* and *James F. Green* for appellant.

(1) No payment having been made by defendant Herrington on the note in suit within ten years prior to the date of the institution of plaintiff's suit, there

can be no recovery. R. S. 1899, sec. 4294; Maddox v. Duncan, 143 Mo. 613, 45 S. W. 688; Regan v. Willams, 88 Mo. App. 577; Corbyn v. Brockmeyer, 84 Mo. App. 653. (2) Nor can defendant Herrington be held liable upon an acknowledgment of the debt. Such acknowledgment to remove the bar of the statute must be in writing and contain an unqualified admission of a present subsisting debt. Wells v. Hargrave, 117 Mo. 568, 23 S. W. 885; Kirkbride v. Gash, 34 Mo. App. 260; Chidsey v. Powell, 91 Mo. 627, 4 S. W. 446; Chambers v. Ruby, 47 Mo. 99; Carr v. Hurlburt, 41 Mo. 267.

*L. F. Dinning* and *E. J. Bean* for respondent.

(1) The defendant is estopped from pleading the Statute of Limitations in bar of plaintiff's claim on the note. 19 Am. and Eng. Enc. Law (N. E.), p. 288, sec. 16; Dry Goods Co. v. Goss, 65 Mo. App. 55; Railroad v. Cooms, 71 Mo. App. 299; Bridges v. Stevens, 132 Mo. 538, 34 S. W. 555; Holman v. Railroad, 62 L. R. A. 397; Derrick v. Ins. Co., 74 Ill. 404; Newton v. Carson, 5 S. W. 475. (2) Estoppel *in pais* may rise in action at law as well as in equity and the fact that it does arise and become an issue in a proceeding before a justice does not defeat his jurisdicton. Pittman v. Mining Co., 78 Mo. App. 438.

GOODE, J.—Action on the following promissory note:

"$250.00                    Hillsboro, Mo., May 4th, 1889.

"One (1) year after date we, or either of us, promise to pay to Millard F. Herrington, or order, the sum of two hundred and fifty dollars ($250) for value received, with interest from date at the rate of ten (10) per cent per annum, and if interest be not paid annually to become as principal and bear the same rate of interest.

" (Signed) MARY A. CRAFT," and eight other names.

The note was signed on its face by Mary A. Craft and eight other makers. It was indorsed on the back as follows:

"J. H. MORSE,

"HENRY STELBRINK,

"M. F. HERRINGTON.

"I hereby waive demand, notice and protest.

"M. F. HERRINGTON.

"Payments indorsed as follows:

"$112.45, paid 10-29-92

"$104.16, paid 12-17-97

"$ 34.53, paid 5-30-1900."

The first indorsement was by Morse and Stelbrink to Herrington, who held it for about eight months and in May, 1889, indorsed it to the respondent who had purchased it from him. Though the names of Morse and Stelbrink appear on the back of the instrument, we understand they were joint makers. The evidence is rather obscure regarding the origin of the note; but suggests that Herrington advanced the money called for by it in order to prevent the sale of some property in which Stelbrink, Morse and the other makers were interested. The defense is the Statute of Limitations.

It is conceded that the payments credited on the note were not made by Herrington, but by one or more of the joint makers; therefore, as the cause of action against Herrington is based on the independent contract created by his indorsement, to which the makers were not parties, the payments did not defer the running of the statute in his favor from the date of his indorsement. [Maddox v. Duncan, 143 Mo. 613.]

This action was instituted April 9, 1901, more than ten years after the date of Herrington's indorsement. To overcome the defense of the Statute of Limitations, the repondent relies on a letter written by Herrington to respondent's attorney, and said to acknowledge the debt, and on an oral promise by him that if suit was not brought until the estate of Henry Stelbrink was settled,

appellant would pay the balance then due on the note. The letter reads as follows:

"De Soto, Mo., 3-21-1901.

"Mr. E. Bean,

　　"Hillsboro, Mo.

"Dear Sir: When you come down bring that note and all of the credits, or send them to me, as I want to have it figured. The way I got it from you was this: May 4th, '89, note $250 at ten per cent. Paid October 29, '92, $112.45; February 20, '97, $260.41; December 17, '97, $104.16; May 5, 1901, $40.00.

"If I have the dates and amount right except the third payment. I don't think I got that right.

　　　　　"Yours respectfully,

　　　　　　　"M. F. HERRINGTON."

That letter contains no direct and unequivocal acknowledgment of the defendant's liability on the note and no promise, either express or implied, to pay it. If it had acknowledged the note as a subsisting debt against the appellant, it might have been sufficient to postpone the running of the statute without an expression of willingness or intention to pay. [Chidsey v. Powell, 91 Mo. 622, 4 S. W. 446.] The letter relates to the note, but nothing in it can be construed as an admission on the part of the appellant that it was a subsisting debt of his. The language used by the writer shows he was concerned about the note; but we understand that a writing must unequivocally acknowledge the existence of a debt or contain a promise to pay, in order to suspend the statute. As to the point under consideration, this case is like Wells v. Hargrave, 117 Mo. 563, 23 S. W. 885. The debtor in that case wrote a letter to his creditor which contained the following reference to the indebtedness:

"Will make you a statement of what I got of you in land purchases. The amount was two hundred and ninety acres and seventy-six hundredths (298.76) acres

the price was five dollars per acre or ($1,548.05) fifteen hundred and forty-eight dollars and five cents, all to be due in January, 1869. This statement I make from recollection and pretty sure correct, but I hold the original papers, and cancelled them all in the Texas trade and trip. My intentions are true and faithful, but my abilities are rather cramped now until can sell or make some money otherwise.''

That writing was held by both the circuit court and the Supreme Court to be an insufficient acknowledgment of or promse to pay the notes sued on, to take the case out of the statute. The Supreme Court said that to accomplish that purpose the acknowledgment must be in terms so distinct and unqualified that a promise to pay upon request, or at some fixed time, may reasonably be inferred from it; must be clear and explicit, not incumbered by any conditions; that there need not be an express promise to pay provided a clear, distinct and unequivocal acknowledgment of the debt is shown. In Carr v. Hurlburt, 41 Mo. 267, it was said that to take a case out of the statute there should be an express promise to pay or an acknowledgment of an actual, subsisting debt from which the law would imply a promise. In Chambers v. Rubey, 47 Mo. 99, it was held the acknowledgment should contain an unqualified and direct admission of a present and subsisting debt. [See, too, Kirkbride v. Gash, 34 Mo. App. 258.] We think it is plain the defendant's letter did not interfere with the running of the Statute of Limitations against his obligation as indorser of the note.

According to the testimony of the respondent and Mr. Bean, his attorney for the collection of the note, the appellant was anxious that as much money as possible should be realized out of the estate of Henry Stelbrink, who had died in the meantime. They say that, at appellant's request, and relying on his promise to pay whatever remained due after respondent had ex-

hausted his remedy against the Stelbrink estate, the respondent refrained from suing for more than ten years subsequent to appellant's indorsement. In view of these facts it is asserted that appellant is estopped to interpose the Statute of Limitations as a defense. In passing on this proposition it is important to ascertain just what the testimony to support it is. Herrington testified that he never considered the note his debt; but as he had assigned it to Monroe, was interested in seeing that the latter was paid and, therefore, informed him of a certain asset of the Stelbrink estate which the administratrix had failed to inventory. The asset was a brewery bond for $1,000. Munroe swore Herrington told him to get what he could out of Stelbrink's estate and he (Herrington) would pay the balance, at the same time informing him of the brewery bond, which, if it could be reached, would suffice to pay the note. This promise by Herrington to pay any balance left when Stelbrink's estate was settled was given in 1897, and less than ten years after the date of Herrington's indorsement. Bean testified that in various conversations about the note while he was endeavoring to collect it, Herrington asked him not to sue until the Stelbrink estate was settled—to make what he could out of that estate saying he (Herrington) would pay the balance. Bean also testified there was a tract of land belonging to the Stelbrink estate which was to be sold by the administratrix, and Herrington thought he could make enough by buying the land at the sale to reimburse him for what he might have to pay on the note. The sale occurred May 14, 1900, and the estate must have been settled later; consequently when the settlement occurred, ten years had passed since Herrington indorsed the note. In none of the conversations was the Statute of Limitations mentioned or the danger of the note being outlawed. Neither is it contended that the appellant agreed to waive the defense of the statute if the respondent would forbear suing. Making the Statute

of Limitations part of the subject-matter of their conversations or agreement with reference to the note, was never thought of by either party. The most favorable view of the testimony for the respondent is that appellant asked that no suit be instituted and the Stelbrink estate proceeded against, promising to discharge whatever balance remained unpaid on the note after as much as possible had been obtained from said estate toward paying it. There was no testimony that either the respondent or his attorney agreed not to sue until the estate was settled; though in point of fact the present action was begun after it was settled. But for aught that appears it might have been brought at any time. The question is whether the appellant is estopped to interpose the statute if the respondent refrained from suing, in reliance on his promise to pay, until after the statutory period had elapsed. If there had been a positive agreement to waive the defense of the Statute of Limitations, this question could be answered easily on the authority of Bridges v. Stephens, 132 Mo. 524. In that case it was determined that an agreement not to plead the statute or rely on it as a defense, if the obligee would forbear to sue until the limitation period expired, was valid and would be enforced. There the testimony showed a positive agreement between the parties, the subject-matter of which was the defense of the statute, and a promise by the defendant to waive the defense if the plaintiff would withhold suit on his demand. The agreement was requested by the defendant and acceded to by the plaintiff in the hope of adjusting the claim without litigation. The same proposition has been decided in other jurisdictions and some of the cases are reviewed in the opinion of the Supreme Court in the case mentioned. In most instances, though not always, when a party was precluded from interposing the limitation defense, it was because he had agreed to waive it, which agreement was held to suspend the operation of the statute. [Weber v. Williams College, 23 Pick.

302; Gaylord v. Van Lohm, 15 Wend. 308; Walker v. Wayne, 23 Maine 453; Benton v. Stephens, 24 Vt. 131; In re King, 94 Mich. 411; Rowell v. Lewis, 72 Vt. 163.] It was decided in Bridges v. Stephens, that an agreement not to plead the Statute of Limitations against a debt is neither an acknowledgment of the debt nor a promise to pay it, but a distinct and separate contract on the part of the debtor. The importance of this distinction is that it enables a court to enforce the agreement to waive the statutory bar without infringing the other section of the limitation act which provides that no acknowledgment or promise shall be evidence of a new and continuing contract whereby to take a case out of the operation of the Statute of Limitations, or deprive a party of its benefits, unless the acknowledgment or promise be contained in some writing subscribed by the party chargeable. [R. S. 1899, sec. 4294.] If an agreement not to plead the statute as a defense were regarded as an acknowledgment of a debt or a promise to pay, the agreement would fall within the very words of the section just cited and would be invalid unless in writing. But by treating it as an independent undertaking, the subject-matter of which is the statutory defense and not the debt, it may be held valid though verbal. Now, in the present case, there was no agreement to waive the defense of the Statute of Limitations if the respondent would refrain from suing a stipulated time, but simply a promise by the appellant to pay whatever balance then remained due. This promise seems to come within the words of the statute requiring an acknowledgment or promise to be in writing in order to suspend the operation of the Statute of Limitations. There is no way to render Herrington's promise to pay available to the respondent against the defense that the obligation was barred, except by annulling the express requirement of the law that a promise must be in writing to have that effect. Respondent's counsel realize this difficulty and seek to evade it on

the theory that the promise to pay, though not valid as a contract, operates by way of estoppel, and precludes the appellant from setting up the bar of the statute. It is said his promise was relied on and no suit begun until the statutory period had expired and, therefore, it would be inequitable to allow him to use the statute as a defense, he having induced the respondent to put himself in a worse position. We have found one case which countenances this argument. [Armstrong v. Levan, 109 Pa. St. 167.] Perhaps others of a similar tenor can be found. Our opinion is that in this State the determination of the question is controlled by the statute requiring acknowledgments and promises to be in writing in order to check the running of the limitation period. To allow an estoppel based on a promise to pay after a certain contingency, which does not happen until the limitation period has expired, would be an evasion of the law. It would take cases out of the statute on verbal promises when the law says this can only be done by a written promise. Proof is lacking that the appellant induced delay in suing in order to have his debt barred. The repondent knew the statute was running as well as the appellant, and if he desired to protect himself against it, should have required the appellant to waive it. Neither thought of the matter and, therefore, the essential elements of an estoppel are lacking. The appellant was not seeking to secure a discharge of his debt by time, and if that was the result of what was said and done, it was an unthought of consequence, due to the carelessness of the respondent rather than to any fraudulent representation of the appellant. The respondent was in no sense misled in regard to the defense of the Statute of Limitations by anything said to him, and as he is supposed to know the law, and could have guarded against the effect of it by insisting on an express waiver, or suing sooner, he is in no position to assert an estoppel. [Hydraulic Brick Co. v. Neumeister, 15 Mo. App. 592; Justice v. Lancaster, 20

Mo. App. 559; Andrae v. Redfield, 98 U. S. 255.]
It has been decided in cases dealing with the
very question that is now under consideration,
that in order to prevent the defense of the Stat-
ute of Limitations by estoppel or waiver, there
must have been a distinct agreement by the party sued
not to interpose the defense. Mere reliance on the
debtor's promise to pay if not sued, affords no ground
for cutting him off from the defense when sued. [Hill
v. Hilliard, 103 N. C. 34; Joyner v. Massey, 97 N. C. 148;
Bank v. Hill, 10 Humph. (Tenn.) 176; 51 Am. Dec.
698; Andrae v. Redfield, supra.] In Bank v. Hill,
10 Humphrey, supra, the action at law was on a bill of
exchange and the Statute of Limitations was inter-
posed in defense. Thereupon the bank sought to en-
join the defendant from relying on that defense. Hill
was the last indorser on the bill and desiring not to be
sued, asked the bank to proceed against his previous
indorser, Perkins, who was supposed to be good. Hill
pointed out a tract of land owned by Perkins and urged
the bank to collect the bill of exchange out of the land.
At his request the bank attached the land and while that
litigation was pending the Statute of Limitations ran
against Hill. The debt was not made out of the land,
so the bank subsequently sued Hill. That case greatly
resembles this one in its facts. In neither was there
a positive agreement not to plead the statute if suit
was delayed. But it was asserted that Hill's conduct
was equivalent to an agreement not to plead it. The
court considered it an instance of an indulgent cred-
itor relying on promises of his debtor and that such
conduct could not be allowed to toll the Statute of
Limitations without disregarding the law. In Andrae
v. Redfield, supra, the plaintiff had sued the defend-
ant for illegal duties exacted by the latter as collector
of customs. The defense was the Statute of Limita-
tions. To this defense it was replied that the plaintiff

Monroe v. Herrington.

had been told by an officer of the custom house and by the Secretary of·the Treasury, that if plaintiff's claim for excessive duties was presented to the auditor the presentation would, according to the rules and practice of the treasury department, prevent the Statute of Limitations from running and the statute could not be interposed as a defense to a suit brought thereafter. In that statement the defendant concurred, though disclaiming any control of the matter. The question for decision by the United States Supreme Court was whether this representation or statement to the plaintiff sufficed to prevent the statute from running against his demand. It was held there was neither a promise by the plaintiff to forbear instituting suit, nor by the defendant that if forbearance was granted the statute would cease to run; that the plaintiff might have sued at once, and no estoppel could be raised against the defendant on the statements made to the plaintiff. Though dicta may be found which support the theory of an estoppel where a creditor refrains from suing for a definite time, relying on the promise of his debtor to pay, we have found no case where that proposition is accepted as the rule of decision, unless it be the one in the Pennsylvania reports cited above. This subject is discussed but meagrely by text-writers, nor are the adjudications bearing on it numerous; but the weight of authority is in favor of the doctrine that the statute may be pleaded in defense of a claim unless it was waived by a distinct agreement not to interpose it. However, we need not generalize or go that far. What we have to deal with is a verbal promise on the part of the defendant to pay whatever was owing on the note when the Stelbrink estate was settled. It happened that more than ten years elapsed from the date of appellant's indorsement until the final settlement of the estate. Consequently the statute is a defense unless the appellant has precluded himself from interposing it. He never

agreed nor intimated that he would not interpose it. The most that can be made of the facts is that he was indulged in the expectation that he would pay according to his agreement, if the note was not collected from the estate. This expectation was based on his verbal promise; and as our statute says such a promise shall not hinder the operation of the Statute of Limitations, we hold the appellant was free to invoke the statute.

The judgment is reversed. All concur.