## W. N. McKay, Appellant, v. C. G. McCarthy.

**Limitation of actions for fraud:** PURCHASE OF CORPORATE STOCK:
DECEIT. The statute providing that a cause of action for fraud shall not be deemed to have accrued until the fraud is discovered, only applies to cases of fraud for which relief may be obtained in equity; and as an action for damages for false representations inducing a sale of corporate stock, as in this case, is merely a common law action for deceit, the right of action therefor accrued when the transaction was consummated, at which time the statute of limitation began to run rather than at the time the fraud was discovered.

**Same:** ESTOPPEL TO PLEAD LIMITATION: FALSE REPRESENTATION. Statements made by the seller of corporate stock to induce the purchaser not to sue for damages because of alleged false representations inducing the purchase, to the effect that the stock was all right, that the suit would injure the company's credit, that the company would reorganize and be successfully operated and that defendant would see that plaintiff was reimbursed, are held to have been mere arguments to induce plaintiff not to sue at all, and not merely to delay suit until it was barred, and were therefore insufficient to estop the defendant from pleading the statute of limitations in bar of an action for the deceit.

**Pleadings:** DEFENSES: MOTION TO SEPARATE. Where several separate affirmative defenses are pleaded in one division of the answer, the remedy is by motion to require that the defenses be separately pleaded, or a motion requiring defendant to elect upon which defense reliance will be placed, and not a motion to strike the entire division of the answer.

**Same:** MOTION TO STRIKE: PREJUDICE. Error in refusing to strike a division of an answer alleging affirmative defenses which were elsewhere properly pleaded was prejudicial, where the court also dismissed the count of the petition which such defense answered.

**Action for fraud:** DEFENSE. The fact that a purchaser of corporate stock was offered for the same, by defendant and others, more than it cost him is not a defense to an action for damages based

upon a promise that if he would not sue for false representa-. tions inducing the purchase the seller would see that he got his money back, unless such offer to purchase was made after the promise of indemnity.

**Same.** The fact that the purchaser of the stock in question disposed of the same was not a defense to an action for damages against the original seller for fraudulent representations inducing the sale; but would simply go to a reduction of the damages to the extent of the amount received by him.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

WEDNESDAY, DECEMBER 15, 1909.

REHEARING DENIED, WEDNESDAY, MARCH 16, 1910.

THE petition as amended alleged the organization of the Rocky Mountain Smelting Company prior to May 11, 1900, at which time defendant and others were directors thereof, for the purpose of constructing and operating a smelting and refining plant at Florence, Colo.; that in 1903, through foreclosure proceedings, the company's plant was sold to Anna Kendall; that defendant, with others, organized the Iowa Fiduciary Company, which acquired the property from Anna Kendall, and thereafter the same parties organized the Colorado Smelting & Refining Company, which purchased the property from the Iowa Fiduciary Company May 10, 1904, when owners of preferred stock in the Rocky Mountain Smelting Company were given a like amount of stock in the company last organized upon condition they purchase a stipulated percent additional stock therein. Plaintiff surrendered the fifty-six shares in the company first mentioned with $140, and received in lieu thereof seventy shares in the Colorado Smelting & Refining Company. The plaintiff alleged that through false representations of defendant he was

induced to and did purchase fifty-six shares of the preferred stock in the Rocky Mountain Smelting Company, paying therefor $750 on May 11, 1900, $250 on September 27th, and $400 on October 16th of the same year, that he did not discover the fraud practiced on him until in 1902, within five years prior to the commencement of this action; that upon such discovery he tendered the stock back to the directors of the company in 1903, by whom it was refused, and was about to bring suit, because of said fraud, when defendant induced him not to do so by promising to see that plaintiff got his money back, and causing encouraging reports to be sent to him, and represented that the stock was all right and the plant would soon be in operation, and that such a suit would ruin the credit of the company, and, because of these and other statements, plaintiff forbore bringing suit. That, after the foreclosure proceedings, plaintiff was again about to bring suit when defendant represented the company would be reorganized, that men of influence were going to invest therein and the plant would soon be in operation, and, if plaintiff would forbear bringing suit, defendant would personally agree to see that plaintiff got his money back, and, in consideration of that promise, plaintiff agreed to do, and did, forbear bringing suit, and said representations and promises were repeated at divers times up to 1907, but, although often requested, defendant has never returned the moneys paid for said stock, and plaintiff prayed judgment therefor and for certain expenses and moneys paid out and for loss of time.

In the second count of the petition, the allegations with reference to the promises of defendant that plaintiff would get his money back or that defendant would see to this are repeated, and it is alleged that, though often requested, defendant has refused payment. Prayer was for the amounts mentioned with interest. It was stipulated that the first count was based on false representa-

tions, and the second on the promise alleged to have been made as an inducement not to bring suit, and thereupon the defendant demurred to the counts of the petition separately. The demurrer to count one was sustained, and, as plaintiff elected to stand on the ruling, the count was dismissed. The demurrer to count two was overruled, and defendant filed an answer in six divisions, which was assailed by a motion to strike in fifteen paragraphs. This motion was overruled, and plaintiff demurred to each of the last five divisions of the answer. The demurrer was overruled, and plaintiff having elected to stand on the ruling on the motion, in so far as it assailed division one, and on that on the demurrer to the remaining five divisions of the answer, the petition, as amended, was dismissed. The plaintiff appeals. *Affirmed* in part, and *reversed in part.*

*Hubert, Utterback* and *J. M. Parsons,* for appellant.

*Baily & Stipp,* for appellee.

LADD, J.—The gravamen of the action pleaded in the first count of the petition is fraud alleged to have been perpetrated in the sale of stock in a smelting company.

1. LIMITATION OF ACTIONS FOR FRAUD: purchase of corporate stock: deceit. The representations alleged to have been false, and by which plaintiff is said to have been induced to part with his money, were that defendant had examined into the affairs and property of the company; that it was the best located of any plant in the country because of which it would smelt ore for twenty-five percent less in cost than other smelters; that the metallurgical process which it would use had been tested, and was superior to that of other plants; that the company had contracted with the railroad company to haul ore from Cripple Creek at $1 per ton less than it could be carried to other competing

smelters; that the smelter would use three hundred to five hundred tons of ore per day, and that the preferred stock would earn an annual dividend of eighty-one percent and the common stock seventy-three percent when in operation; that no smelter had ever failed, and that the investment was safe and defendant had invested his own money therein; that no commission or salaries had been or would be paid for the sale of preferred stock, and that the entire proceeds thereof would be used in equipping and building the plant. The defendant claims that these were no more than opinions and not statements of fact, and that in any event the action is barred by the statute of limitations; while plaintiff contends that the cause of action is not deemed to have accrued until the discovery of the fraud which was within five years prior to the bringing of the suit, and that, regardless of this, defendant is estopped from taking advantage of such plea in bar. Section 3447 of the Code (paragraph 6) provides that action must be commenced "for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery and all other actions not otherwise provided for in this respect, within five years." Section 3448: "In actions for relief on the ground of fraud or mistake and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake or trespass complained of shall have been discovered by the party aggrieved." The last section has been held to refer to "fraud in cases heretofore solely cognizable in a court of chancery." *Daugherty v. Daugherty,* 116 Iowa, 245. In *Relf v. Eberly,* 23 Iowa, 467, the court, in construing these sections, decided that the intention was "to protect the rights of the parties and to recognize their right to relief, not in every case allowed by the prior rule, but in those cases where the relief asked was alone grantable in a court of equity." In that case it was conceded that, had the action been for damages, the delay in discovering the al-

leged fraud would not have postponed the time when the cause of action accrued, but, as the suit was for the rescission of a contract procured by fraud, it was not deemed to have accrued until the discovery of such fraud. In *Higgins v. Mendenhall,* 51 Iowa, 135, the true test was said to be whether chancery, before the enactment of the statute, had exclusive jurisdiction to grant the relief prayed, and the court declared in substance that an action for damages based on deceit was not such a suit. Such relief was obtainable at the common law in an action on the case, and appears to have been founded on the ancient writ of deceit. The first count of the petition as amended states no more than a cause of action for deceit which was cognizable at the common law, and therefore accrued when the transaction was consummated rather than when the fraud was discovered by the aggrieved party. *Jacobs v. Frederick,* 81 Wis. 254 (51 N. W. 320), 25 Cyc. 1081. See *Mason v. Henry,* 152 N. Y. 529 (46 N. E. 837); *Jaffray v. Bear,* 103 N. C. 165 (9 S. E. 382); *Lenhardt v. French,* 57 S. C. 493 (35 S. E. 761). It is not alleged that the cause of action was concealed by defendant, and, for this reason, *Faust v. Hosford,* 119 Iowa, 97; *Blakeney v. Wyland,* 115 Iowa, 607; *District Tp. of Boomer v. French,* 40 Iowa, 601, and *Carrier v. Ry.,* 79 Iowa, 80, are not in point.

But it is argued that the defendant, by reason of having asked plaintiff to forbear bringing suit and promising him that if he would do so defendant would see that he got his money back, and plaintiff

2. SAME: estoppel to plead limitation: false representations.

having complied with such request, is now estopped from pleading the period of limitations in bar. It is not alleged that defendant agreed not to interpose such a plea, as in *Holman v. Ry.,* 117 Iowa, 268, nor is it asserted that the promise was made with the fraudulent design of taking advantage of the statute of limitations. Probably the conduct of a

party may be quite as potential in estopping him from taking advantage of the statutory bar as an express promise, but we do not regard the mere promise to see that, the person claiming to have been defrauded will get his money back, and roseate representations of what is likely to be the outcome of the enterprise concerning which the fraud is alleged to have been practiced, alone sufficient for this purpose. What was said to dissuade plaintiff from bringing suit the first time, in addition to the promise, was no more than a representation that the plant was all right and would be put in operation soon, that to start the suit would ruin the company's credit, and that plaintiff would make a mistake if he did not keep the stock; and the second time, that the company would be reorganized in a few months, that men of means would invest heavily therein, that the plant would be in operation soon, and that he would make a great mistake if he disposed of his stock, and a repetition of encouraging statements of this kind subsequently. These were mere arguments and opinions concerning the outcome of the enterprise, calculated to persuade plaintiff that he might derive greater advantage from holding his stock without instituting suit for damages than from prosecuting it. The propriety and probable advantage as well as the disadvantage of litigation are matters to be considered in bringing any action. What was said by defendant bore solely on the advisability of instituting the action, and not on determining when it should be begun. In other words, the allegations amount to this: that defendant talked plaintiff out of bringing suit at all rather than into postponing it until a specified time or the happening of some event, contingent or otherwise. This being so, it is plain that the facts, in the absence of fraud, are not sufficient to estop defendant from interposing the bar of the statute of limitations when plaintiff subsequently changed his mind as he might have done at any time during the statutory period

and prosecuted the action. If this were not so, one against whom claim is made might not present reasons against prosecuting suit thereon without taking the risk of indefinitely postponing the time within which such suit to be maintained must be begun. We are of opinion that statements calculated to dissuade a litigant from beginning an action and not designed to induce its postponement merely will not, in the absence of fraud, estop the party making them from availing himself of the plea of the statute of limitations in event of the subsequent prosecution of such action.

Nor, for the like reasons, is defendant estopped from interposing such a plea by the promise to see that plaintiff would get his money back if suit were not brought based on the deceit alleged to have been practiced on him by defendant. This did no more than give the plaintiff an option to proceed with his action for deceit or rely on the promise to see that he should get his money back in consideration of a forbearance to bring suit. No suggestion or request of postponement is alleged. Everything said to have been stated by defendant was directed to obviating suit entirely, not to delay the beginning of it. If, in reliance on the prospects of the enterprise as depicted by defendant, or on his promise that he would see that the amount invested would be restored, plaintiff was induced not to institute suit, this furnishes no reason for setting aside a statute enacted in the interest of a beneficent public policy when he finally changes his mind.

Moreover, if a promise to pay may be interposed by way of a plea in estoppel to defeat the bar of the statute of limitations, then the provision of section 3456 of the Code that a debt is revived by a written promise to pay signed by the party to be charged is nugatory, for, though a like oral promise may not revive the claim, it would be quite as effective in estopping the promisor from availing himself of the benefit of the statute. These views

find support in *Monroe v. Herrington,* 110 Mo. App. 509
(85 S. W. 1002), where an indorser of a promissory note
agreed to pay any balance left, after collecting what could
be out of the estate of another indorser, with a request
not to sue until such estate had been settled. The court
held the promise and requests not to estop the defendant
from taking advantage of the statute. *Bank of Tennessee
v. Hill,* 10 Humph. (Tenn.) 176 (51 Am. Dec. 698),
was an action against an indorser on a bill of exchange.
Hill, when pressed for payment, requested ·the bank to
enforce collection against a prior indorser, and pointed
out land belonging to the latter. The bank acquiesced,
and instituted suit as requested and attached the land,
but it was exhausted by superior liens, and, owing to the
law's delays, the statute of limitations run in favor of
Hill before suit was begun against him. The court held
that he was not estopped from interposing the plea of
the statute in bar, regarding it as "the common case of
one who induces an indulgent creditor not to sue by prom-
ises to pay, or by protestations that he is not pecuniarily
liable, or that he ought not to be sued before the remedy
against those who are has been exhausted, whereby he be-
comes released by the operation of time. In all such cases,
it becomes the imperious duty of the creditor, if he wish
to be protected against the bar of time, so to contract;
to hold otherwise would be, to destroy the defense of the
statute of limitations, which has of late years been looked
upon most favorably both at law and equity." See *Andrea
v. Redfield,* 98 U. S. 225 (25 L. Ed. 158). The only
decision we have been able to find holding to the contrary
is *Armstrong v. Levan,* 109 Pa. 177 (1 Atl. 204). There,
a prothonotary in entering judgment inserted another name
instead of defendant's, and upon being informed by the
plaintiff's attorney that, unless settled, suit for damages
would be brought, assured him that if his client suffered any
loss he would make it good, and would see that she lost noth-

ing through his mistake. Suit was not begun against him until after the lapse of the statutory period, and the court, construing the promise as one to pay, held that it estopped defendant from interposing the plea of the statute of limitations. The court in *Monroe v. Herrington, supra,* declined to follow the decision. The vice in its reasoning lies in the assumption that the promise might be relied on as an inducement not to institute suit within the statutory period. The promise put the complainant under no obligation to forbear suing. If it were not kept, she knew this quite as well as defendant, and was quite as well aware as he within what time an action for misfeasance must have been brought. Surely, then, it was not of a character calculated to mislead her into unduly postponing the action, and for this reason, in all deference to that court, a different conclusion might well have been reached. Such a case differs essentially from those deciding that an agreement to refer to arbitration and perform the award will estop the parties from taking advantage of the statute, for another mode of adjusting the differences of the parties has been agreed upon, the necessary effect of which is to prevent either party from prosecuting his cause of action. Neither in *Armstrong v. Levan, supra,* nor in the case at bar was there a promise to forbear suit in consideration of the alleged promise to pay, and, for all that appears, suit might have been begun at any time, as in *Monroe v. Herrington, supra,* where this was regarded as a controlling circumstance. The decided weight of authority is to the effect that the statute may be pleaded unless waived by an agreement express or clearly to be implied that this will not be done. In the case at bar, the plaintiff may have made a mistake in forbearing the beginning of suit in consideration of the defendant's promise, but having done so furnishes no reason for allowing him to repent of his bargain after the lapse of the period within which the action for deceit

might have been maintained, and, abandoning his claim on the promise, prosecute the action for deceit. Having elected to rely on the promise, it is not available to estop defendant from interposing the plea that his action for deceit was not instituted within the statutory period.

II.  The second count of the petition, as amended, is based on the alleged promise of defendant that if plaintiff would forbear suing him for deceit he would see that he got his money back. The demurrer thereto

3. PLEADINGS: defenses: motion to separate.

was overruled, and the defendant filed an answer in six divisions. In the first, he admitted having been a director of the corporation as alleged, but denied having sold plaintiff any stock therein or having made any of the representations alleged, or having been instrumental therein; admitted plaintiff purchased stock, but denied that he ever promised that he would see that plaintiff would get him money back, or that plaintiff ever requested him so to do; averred that he at one time offered plaintiff much more for his stock than he had paid for it, as did others; that plaintiff surrendered and transferred his stock in the Rocky Mountain Smelting Company to the Iowa Fiduciary Company, and, in consideration thereof and $140 additional, received from the latter company $1,750 par value of stock in the Colorado Smelting & Refining Company, and that through said transactions the cause of action was settled or transferred the same to the Iowa Fiduciary Company; that since beginning the action plaintiff had sold the stock in the Colorado Smelting & Refining Company to one Conklin, and had thereby waived and forfeited his cause of action; that, in so doing, he had transferred said cause of action to Conklin. The allegations with respect to the offers to purchase the stock, the transfers to the Iowa Fiduciary Company and to Conklin, are each repeated in separate paragraphs, constituting the remaining five divisions. The plaintiff filed a motion to strike in fifteen paragraphs,

and this was overruled. Thereupon he filed a demurrer to the last five divisions of the answer and this was overruled. The plaintiff elected to stand on these rulings, and the second count of the petition was dismissed. It will be noted that, aside from the denials of division one of the answer, there were included five affirmative defenses, but this was not ground for striking the entire division. The remedy was by motion to require defendant to separately plead the several defenses or to elect on which one the defendant would rely. *Wright v. Conner,* 34 Iowa, 240. See section 3568 of the Code directing that "each affirmative defense shall be stated in a distinct division of the answer, and must be sufficient in itself, and must intelligibly refer to that part of the petition to which it is intended to apply." The motion also asked that the parts of division one alleging such affirmative defenses be stricken therefrom. Had the effect of this been to eliminate these from the answer entirely, there might be some doubt whether the proper remedy would not be as above indicated. But each affirmative defense was pleaded in a separate division of the answer, as by statute required, and there was no occasion for the remedy as above indicated. Asserting these defenses in division one was but vain repetition in a manner contrary to the statute quoted of matters subsequently properly pleaded, and should have been stricken as surplusage.

But for the condition of the record, this ruling might be regarded as without prejudice. It appears, however, that though the motion was overruled, on an election to stand on the ruling, the court dismissed the count of the petition to which the division was an answer. Upon overruling of the motion there was nothing for plaintiff to do save to proceed to trial, and, as he was not required to do this, the court ought not to have entered the dismissal. Because of having done so the ruling on the motion must be treated

4. Same: motion
   to strike:
   prejudice.

not only as erroneous, but prejudicial as well. The ground of the demurrer to each of the last five divisions of the answer was that, conceding the facts as stated, they did not operate as a complete defense.

In the second division, it was alleged that at a date defendant was unable to state he offered plaintiff more for his stock than he had paid therefor, and in the third division that others had done the same. Un-

5. ACTION FOR FRAUD: defense.

less these offers were subsequent to the alleged promises, neither of them constituted a defense regardless of whether it would have been otherwise if subsequent thereto. They are not alleged to have been made thereafter and therefore the demurrer to each division should have been sustained. The fourth division alleged the surrender of the stock to the Iowa Fiduciary Company and the receipt in lieu thereof of stock in the Colorado Smelting & Refining Company, and that thereby the cause of action was settled or was transferred to the Fiduciary Company. Just how this might operate as a settlement or transfer is not perceived. Upon ascertaining that he had been induced by fraud to purchase the stock, two remedies were open to the plaintiff: He might elect to rescind by tendering back the stock and claiming the return of the price; or he might elect to confirm the purchase, retain the stock, and sue for damages. He elected to pursue the latter course and might dispose of the stock as he chose without parting with his claim for damages. In lieu of such claim, as is averred, defendant promised to see that he should get the money which he had paid for the stock back. How this was to be brought about does not appear.

The fact that he may have exchanged the stock first received for other stock, or subsequently have sold that for which he exchanged, did not of itself effect such resto-

6. SAME.

ration of the amount invested, and was not alleged to have had that effect in cash or in

value. Counsel suggest that, by disposing of the stock, plaintiff put it beyond his power to rely on defendant's promise. There was no allegation that as a condition to such promise plaintiff would retain his stock or transfer it to defendant. Nothing in the undertaking of either party restrained him from such disposition thereof as he might deem for his interest. Of course, plaintiff can not retain the stock or its proceeds if sold, and, at the same time, insist upon the entire amount of money paid for the stock being returned. But, as the promise alleged was that he would get the money he paid for the stock back, it is not material, in so far as the fulfillment of the contract is concerned, whether this came in consideration of stock transferred or sold or from the defendant. If he received for the stock other property of value or money, this, as far as it goes, discharged defendant's obligation. But in none of the last three divisions were the facts so pleaded. The mere transfer and sale of the stock, subsequent to the alleged promise, without more, were set up as complete defenses, and, as they were not such, the demurrer should have been sustained. · The validity of the alleged promise is challenged by appellee, but the point is not involved on this appeal. The judgment dismissing the first count of the petition is affirmed, and the rulings on the motion to strike those parts of the first division of the amended and substituted answer alleging the substance of the remaining five divisions thereof, and demurrer as well as the judgment dismissing count two of the petition are reversed.

*Affirmed* in part.  *Reversed* in part.