ROBERT I. YOUNG & another *vs.* DICKINSON A. REED & another[1]

Barnstable.    March 14, 1977. — January 25, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Civil,* Summary judgment. *Frauds, Statute of. Limitations, Statute of.*

In an action for specific performance of an oral agreement to convey land it was error to enter summary judgment for the defendants on the ground that the action was barred by the Statute of Frauds where specific factual allegations in the pleadings, answers to interrogatories, and a deposition were sufficient to raise the issue of part performance. [20–21]

In an action for specific performance of an oral agreement to convey land made twenty-five years before the action was commenced, it was error to enter summary judgment for the defendants on the ground that the action was barred by the statute of limitations, where the plaintiffs' allegations were sufficient to raise the issue whether the defendants' predecessor in title held title upon a trust for the plaintiffs after making the oral agreement and its performance by the plaintiffs and where the plaintiffs' answers to interrogatories indicated that the defendants' repudiation of the plaintiffs' title occurred within the period of the statute of limitations. [22–23]

BILL IN EQUITY filed in the Superior Court on December 19, 1973.

The case was heard by *Keating,* J., on a motion for summary judgment.

The case was submitted on briefs.
*Harold J. Gabriel* for the plaintiffs.
*Lawrence O. Spaulding, Jr.,* for the defendants.

---

[1] The other plaintiff is Audra O. Young, the wife of Robert I. Young, and the other defendant is Esther T. Reed, the wife of Dickinson A. Reed.

GOODMAN, J. This is an action for specific performance of an agreement between the plaintiff Robert I. Young (Young) and Albert E. Reed, the father of the defendant Dickinson A. Reed and brother of the plaintiff Audra O. Young. The plaintiffs claim that Albert Reed agreed to convey a certain parcel of land to them[2] in return for the delivery of sand to Albert Reed's cranberry bog. The defendants' answer denied the existence of the agreement and alleged that the action was barred by the Statute of Frauds (G. L. c. 259, § 1) and the statute of limitations (G. L. c. 260, § 2). On motion of the defendants, summary judgment was entered in their favor (Mass.R.Civ.P. 56, 365 Mass. 824 [1974]) on both grounds. We hold that summary judgment was erroneously granted because the pleadings, Young's answers to interrogatories, and his deposition taken by the defendants raise genuine issues of material fact or, otherwise stated, "allege[ ] facts relating to the transaction on which suit has been brought which raise issues entitling [the]m to a trial." *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 556 (1976).

Those documents allege the following facts: In late 1948 Young agreed to deliver fifty yards of sand for use in Albert Reed's cranberry bog, in return for which Albert Reed agreed to convey to the plaintiffs a strip of land 100' by 250' bordering on other land owned by the plaintiffs in the town of Orleans. Young delivered the sand in January and February, 1949, and entered on the land in that year. He has remained in possession of the parcel ever since, cleared it, planted trees, erected corrals and kept horses on it. No steps were taken by Albert Reed to fulfil his part of the agreement until 1954, when he conveyed half the parcel to the plaintiffs. Some time after

---

[2] It is not clear just what part, if any, Audra O. Young had in the alleged agreement and the subsequent events (with reference to which this opinion may refer to Young only) on which the plaintiffs base their claim. No question has been raised as to the standing of Audra O. Young as a party plaintiff.

this, but before 1968, Albert Reed conveyed the remaining portion of the parcel to Dickinson Reed and his wife without consideration. Dickinson Reed had full knowledge of Young's dealings with Albert Reed. Throughout the period between 1949 and his death in 1968, Albert Reed assured Young that he would convey to the plaintiffs the full parcel, stating various reasons for his delay in doing so. Similar representations were made by Dickinson Reed after Albert Reed's death. These representations continued until the early 1970's when Young learned that Dickinson Reed was about to convey the land to a third party and the plaintiffs brought the present action in December, 1973.

1. *The Statute of Frauds.* In the light of those specific facts, the "absence of any writing"[3]—the ground of the trial judge's ruling that the Statute of Frauds precludes recovery—does not end the matter. Those factual allegations raise in concrete terms—not merely in "vague and general allegations of expected proof" (*Community Natl. Bank* v. *Dawes,* 369 Mass. at 555–556, quoting from *Albre Marble & Tile Co.* v. *John Bowen Co.,* 338 Mass. 394, 397 [1959])—the applicability of the doctrine of part performance which is here invoked by Young's claim in his deposition and answers to interrogatories that he paid the entire consideration, took possession, made improvements, and had used the land for twenty-four years at the time the action was brought. *Potter* v. *Jacobs,* 111 Mass. 32, 37 (1972). *Low* v. *Low,* 173 Mass. 580, 582 (1899). *Williams* v. *Carty,* 205 Mass. 396, 397-400 (1910). *Curran* v. *Magee,* 244 Mass. 1, 5-6 (1923). *Andrews* v. *Charon,* 289 Mass. 1, 3-4 (1935). *Nichols* v. *Sanborn,* 320 Mass. 436, 438 (1946). *Winstanley* v. *Chapman,* 325 Mass. 130, 132-133 (1949). *Fisher* v. *MacDonald,* 332 Mass. 727, 729 (1955).

---

[3] The plaintiffs apparently do not attach any significance to Young's claim in his deposition that Albert Reed at one time signed a deed to the entire 100′ by 250′ parcel which was not notarized and apparently not delivered. Compare *Potter* v. *Jacobs,* 111 Mass. 32, 36 (1872).

*Gordon* v. *Anderson,* 348 Mass. 787, 787 (1965). 2 Corbin, Contracts § 420-421 (1950). 3 Williston, Contracts § 533 (3d ed. 1960). See *Orlando* v. *Ottaviani,* 337 Mass. 157, 161-162 (1958). The defendants cite *Burns* v. *Daggett,* 141 Mass. 368 (1886), in which the circumstances led the court to invoke the Statute of Frauds and deny specific performance; and there are other such cases, e.g., *Hazleton* v. *Lewis,* 267 Mass. 533, 538-540 (1929); *Glass* v. *Hulbert,* 102 Mass. 24, 36 (1869). But the applicability of those cases (as well as those cited above which grant specific performance of an oral agreement) cannot be conclusively appraised on the basis of the pleadings, Young's answers to interrogatories, and his deposition. Such an appraisal must await a more thorough exploration of the issue, which will be afforded at trial. *Tagtmeier* v. *Smith,* 23 F.R.D. 32, (E.D. Pa. 1958). *Traco Steel, Inc.* v. *Mitchell,* 39 F.R.D. 320, 322-323 (D.S.C. 1966). See *McMahon* v. *M & D Builders, Inc.,* 360 Mass. 54, 61-62 (1971); *Rudnick* v. *Grossman,* 3 Mass App. Ct. 719 (1975). At this point it is sufficient that a material issue as to part performance has been properly raised and is unresolved.

Nor are the defendants aided by the fact that they are not parties to the original agreement; and it is not necessary to separate out the circumstances which obtained while Albert Reed held title from those which obtained after he conveyed the parcel in dispute to Dickinson Reed and his wife. The plaintiffs' rights as against Albert Reed were not cut off by his conveyance to the defendants since it appears from the alleged facts that they are not bona fide purchasers. *Davis* v. *Downer,* 210 Mass. 573, 577 (1912). See *Curran* v. *Magee,* 244 Mass. at 5; *Forte* v. *Caruso,* 336 Mass. 476, 481 (1957); *Orlando* v. *Ottaviani,* 337 Mass. at 162. The defendants have not disputed in this proceeding (much less obviated as a matter of law) the allegations in the complaint and the indication in Young's deposition that no value was given by the defendants for the conveyance and that the defendants knew of the dealings between Albert Reed and Young.

2. *The statute of limitations.* The facts alleged in this case—assuming an oral agreement is proved—are adequate to raise the issue whether Albert Reed, as stated in *Low* v. *Low*, 173 Mass. at 582 (citing *Felch* v. *Hooper*, 119 Mass. 52, 57 [1875], and *Ryder* v. *Loomis*, 161 Mass. 161 [1894]), "after the making of the oral agreement and its performance by the plaintiff, held the title in trust for the plaintiff." *Dooley* v. *Merrill*, 216 Mass. 500, 500-501 (1914). *Young* v. *Walker*, 224 Mass. 491, 493 (1916).[4] This "equitable obligation" is enforceable against Dickinson Reed and his wife, who, as it appears, were not bona fide purchasers. *Dooley* v. *Merrill*, 216 Mass. at 501. *Davis* v. *Downer*, 210 Mass. at 577. Compare cases cited in part 1 on rights against a successor in title. Further, "[t]he plaintiff was under no obligation to assert his equitable title until after a repudiation of his right, and the statute of limitations did not begin to run against him until such repudiation." *Low* v. *Low*, 173 Mass. at 582. *Ryder* v. *Loomis*, 161 Mass. at 163. *Prendergast* v. *Sexton*, 282 Mass. 21, 24 (1933). *Radford* v. *Lovett*, 1 Mass. App. Ct. 874, 875 (1974). Here, the factual assertions in Young's answers to interrogatories indicate that a repudiation occurred in the early 1970's; and the suit was brought in 1973, within the six-year period. G. L. c. 260, § 2.

On this analysis, G. L. c. 260, § 13, relied upon by the defendants, is immaterial. The equitable obligation or "trust" relationship would, in this case, arise from the conduct of the parties; the oral representations are not

---

[4] The use of the term "trust" in this connection has been criticized without, however, derogating from the equitable obligation to convey in circumstances such as those here alleged, analogous to the obligation of a trustee. See Pound, The Progress of the Law, 1918–1919, Equity, 33 Harv.L.Rev. 929, 953 (1953), discussing *Raymond* v. *Hattrick*, 104 Wash. 619 (1919), and *Peixouto* v. *Peixouto*, 40 Cal. App. 782 (1919); 1 Scott, Trusts § 13 (3d ed. 1967); Restatement (Second) of Trusts § 13 (1959); and Shattuck, Massachusetts Annotations to 1 Restatement of Trusts § 13 (1936). See also Pomeroy, Specific Performance § 404, at 858–859 (3d ed. 1926); Fry, Specific Performance § 1110 (6th ed. 1921).

the basis for the equitable obligation. Their significance is as evidence that the equitable obligation was not repudiated within six years of the date when suit was brought. See *Gillingham* v. *Brown*, 178 Mass. 417, 422-424 (1901) (parol representations admissible as bearing on the significance of part payment; see G. L. c. 260, § 14).

Since the judgment must be reversed and the case remanded for trial in any event, we need not explore the plaintiffs' further contention that the defendants are estopped to assert the statute of limitations. See *McLearn* v. *Hill*, 276 Mass. 519, 523–527 (1931); Annot., 44 A.L.R. 3d 482, 505–523. Nor need we consider the effect on that contention of G. L. c. 260, § 13. Compare *Oliver* v. *United States Fid. & Guar. Co.*, 176 N.C. 598, 601–602 (1918), and *Albachten* v. *Bradley*, 212 Minn. 359 (1942) (and dissenting opinion, at 370), with *Monroe* v. *Herrington*, 110 Mo. App. 509, 515–520 (1905), and *McKay* v. *McCarthy*, 146 Iowa 546 (1909). See *Brown* v. *Lamb*, 414 F.2d 1210 (D.C. Cir. 1969), cert. denied, 397 U.S. 907 (1970). See generally Dawson, Estoppel and Statutes of Limitation, 34 Mich.L-.Rev. 1 (1935). These matters are better deferred until the facts have been fully developed at trial.

*Judgment reversed.*