ROBERT L. MULVANITY, JR., & another[1] *vs.* ELEANOR M.
PELLETIER.

No. 94-P-516.

Essex. February 3, 1995. - March 4, 1996.

Present: ARMSTRONG, KASS, & GILLERMAN, JJ.

*Contract,* Lease of real estate, Performance and breach. *Real Property,*
Lease. *Frauds, Statute of. Practice, Civil,* Summary process. *Emotional
Distress.*

In a summary process action, a Superior Court judge erred in dismissing the
defendant's counterclaim for breach of an oral lease agreement, where
the defendant averred that she had conveyed the property in question to
her daughter and the daughter's husband in return for a promise that
the defendant could live there for the rest of her life; that the plaintiffs
(the defendant's grandson and his wife) had taken title to the property
with notice of that obligation and not as bona fide purchasers for value;
and that the plaintiffs had breached the contract by refusing to allow the
defendant to live in the house peaceably. |108-109|

In a summary process action, the defendant's counterclaim for intentional
infliction of emotional distress was within the scope of allowable
·counterclaims under G. L. c. 239, § 8A, in circumstances which arose
from the plaintiffs' attempt to evict the defendant (their seventy-seven
year old grandmother), without legal process, from the house the defen-
dant had conveyed to the plaintiffs' parents in exchange for a promise
that the defendant could live there for the remainder of her life.
|109-110|

SUMMARY PROCESS. Complaint in the Salem Division of
the District Court Department dated October 4, 1989.

On transfer to the Superior Court Department the case was
heard by *John T. Ronan,* J.

*John J. Ford* for the defendant.
*Robert A. Munroe* for the plaintiffs.

ARMSTRONG, J. Pelletier appeals from a judgment dismiss-

[1] Deborah L. Mulvanity.

ing her counterclaims against her grandson, Robert L. Mulvanity, Jr., and his wife. The case began as a summary process action in the Salem District Court, in which the plaintiffs sought to evict Pelletier from their two-family house. In her answer, Pelletier asserted a right to live in the house for the remainder of her life. This alleged right also forms the basis for her two counterclaims:[2] one for damages for breach of an oral lease (in the event that possession were awarded to the plaintiffs) and one for intentional infliction of emotional distress.

The circumstances alleged were these. In 1980 Pelletier and her husband, who has since died, then the owners of the property, transferred title to their daughter, Norma, and her husband (the senior Mulvanitys) in return for an oral promise to allow the Pelletiers to live in the house for life.[3] Four years later the senior Mulvanitys transferred the property to their son and daughter-in-law, the plaintiffs, who, according to Pelletier's answer, knew of her claim of tenancy for life and agreed to abide by it. This was denied by the plaintiffs. In any event, the lifetime tenancy was mentioned neither in the Pelletiers' deed to the senior Mulvanitys nor in the senior Mulvanitys' deed to the plaintiffs. For several years after the transfer to the plaintiffs, Pelletier continued to live on the first floor of the two-family house without incident. In the summer of 1989, after what Pelletier alleges were episodes of humiliation and abuse, the plaintiffs served her with a notice to quit and commenced eviction proceedings.

In July, 1991, the plaintiffs' complaint for possession was dismissed for mootness because Pelletier had relinquished her half of the house, allegedly in response to continued pressure to leave. The plaintiffs then moved for dismissal of Pelletier's counterclaims. As to the tort claim for emotional distress, the ground was that G. L. c. 239, § 8A (1994 ed.), allows, in summary process actions, counterclaims only "for breach of warranty, for a breach of any material provision of the rental

---

[2]Pelletier's responsive pleading on its face asserted three counterclaims, but the second ("estoppel") and the third ("damages for violation of lease") in effect stated a single claim for damages for breach of the oral lease in the event that the plaintiffs were awarded possession.

[3]Pelletier alleged that other oral terms were that the senior Mulvanitys would pay outstanding real estate taxes, that the Pelletiers would pay utility bills, and that the senior Mulvanitys would be responsible for all other costs of maintaining the house.

agreement, or for a violation of any other law," and the claim for intentional infliction of emotional distress did not qualify. As to the counterclaim for damages for breach of the alleged lifetime tenancy contract, the ground alleged for dismissal was that any such contract was that of the senior Mulvanitys, not the plaintiffs, and that Pelletier's cause of action, if enforceable, lay against them. The judge, accepting the grounds asserted by the plaintiffs in motions under Mass.R.Civ.P. 12(b)(1) and (6), 365 Mass. 755 (1974), ordered dismissal of the counterclaims.[4]

1. *Damages for breach of oral lease agreement.* Because the counterclaim for contract damages was decided under Mass. R.Civ.P. 12(b)(6), we take Pelletier's allegations as true for purposes of this appeal. These allegations bring the case within the well defined line of decisions, often arising in the context of a transfer of real property by parents to children in return for oral assurances of lifetime support, that permit recovery based on failure of consideration when the promised support is not furnished. See *Robitaille* v. *Robitaille*, 34 Mass. App. Ct. 947, 948 (1993), and cases cited. Viewed differently, Pelletier, on the basis of the allegation that she performed by conveying the property, was entitled to the lifetime lease because the promise of the senior Mulvanitys, although oral,

---

[4]The dismissal of the counterclaim for intentional infliction of emotional distress was allowed on the basis of § 8A. The order stated that "it appears that Pelletier was at best a tenant at sufferance if not a guest of her daughter." The clerk entered a judgment for the plaintiffs on the emotional distress counterclaim. Thereafter the two counterclaims (see note 2, *supra*) based on breach of the oral tenancy were dismissed on a motion to dismiss for failure to state a claim for relief, and an order dismissing those counterclaims and requiring Pelletier to pay the plaintiffs' costs, was entered. At this point, all claims having been disposed of, Pelletier appealed.

Several months later, the record not having been assembled, the plaintiffs moved to dismiss Pelletier's appeal. The judge denied that motion and ordered entry of a final judgment disposing of all claims in accordance with the prior proceedings. Although Pelletier did not file a new notice of appeal after entry of the final judgment, we reject the plaintiffs' argument that her earlier filed appeal was nullified by Mass.R.A.P. 4(a), second par., as amended, 393 Mass. 1239 (1985). The motion for entry of final judgment, although it also sought reconsideration of the rulings on which the dispositive orders were based, was not a motion of the kind that vitiates (if timely filed) a notice of appeal filed prior to disposition. See *Selby Assocs.* v. *Boston Redev. Authy.*, 27 Mass. App. Ct. 1188, 1190 (1989); *Hodge* v. *Klug*, 33 Mass. App. Ct. 746, 750 (1992).

fell within the partial performance exception to the Statute of Frauds. See *Orlando* v. *Ottaviani,* 337 Mass. 157, 161 (1958); *Barber* v. *Fox,* 36 Mass. App. Ct. 525, 530 (1994). Although the plaintiffs were not parties to that agreement, they took title from the senior Mulvanitys with notice (according, again, to Pelletier's allegations) of the equitable obligation to Pelletier, not as bona fide purchasers for value, and, hence, they took subject to that obligation. *Sunter* v. *Sunter,* 190 Mass. 449, 454 (1906). *Ratshesky* v. *Piscopo,* 239 Mass. 180, 184 (1921). *Linse* v. *O'Meara,* 338 Mass. 338, 344-346 (1959). *Young* v. *Reed,* 6 Mass. App. Ct. 18, 21 (1978). If Pelletier should prove that she did not leave the house voluntarily but, rather, in response to a refusal by the plaintiffs to permit her to live peaceably in the house, the measure of her damages would be the monetary value of her right to live in the house for life. *Robitaille* v. *Robitaille,* 34 Mass. App. Ct. at 949. It was error to dismiss the counterclaim for damages for breach of the oral lease.

2. *Intentional infliction of emotional distress.* There is no merit to the contention that this counterclaim was beyond the jurisdiction of the court. General Laws c. 239, § 8A, permits a tenant or occupant to raise by defense to a summary process action or by way of counterclaim "any claim against the plaintiff relating to or arising out of such property, rental, tenancy, or occupancy for breach of warranty, for a breach of any material provision of the rental agreement, or for a violation of any other law." In *Shea* v. *Neponset River Marine & Sportfishing, Inc.,* 14 Mass. App. Ct. 121, 127 (1982), we traced "the metamorphosis of summary process actions from the original unique proceeding which could allow adjudication of only the right of possession in real property to an almost complete civil proceeding," and we recognized that "defendants may now counterclaim on any matter arising out of the rental of such property. . . ." *Id.* at 127 n.7. Counterclaims for intentional infliction of emotional distress have, in fact, been considered, without mention of jurisdictional problems, in such cases as *Wolfberg* v. *Hunter,* 385 Mass. 390, 394-396 (1982), *Haddad* v. *Gonzalez,* 410 Mass. 855, 864-872 (1991), *Cruz Mgmt. Co.* v. *Thomas,* 417 Mass. 782, 783 n.2 (1994), and *Brown* v. *LeClair,* 20 Mass. App. Ct. 976, 977 (1985). See also *Jones* v. *Manns,* 33 Mass. App. Ct. 485, 487 (1992).

Assuming for purposes of decision that, as the plaintiffs argue, not all claims arising out of a rental of real property may be the subject of a counterclaim in a summary process action, but only those "for breach of warranty, for a breach of any material provision of the rental agreement, or for a violation of any other law," and assuming further that the words "any other law" refer to statutory law only, nevertheless we hold that Pelletier's claim falls within the scope of the counterclaims authorized by § 8A. Pelletier's counterclaim describes the extreme and outrageous conduct complained of as the "plaintiffs' willful and intentional failure to honor the lifetime lease they agreed to when the residence was transferred to them," and continues that the "[p]laintiffs knew or should have known that[,] as a result of their actions, the defendant [i.e., Pelletier], a [seventy-seven] year old woman, would suffer extreme emotional distress affecting her health." Her answers to interrogatories flesh out the series of personal indignities to which she was subjected in the plaintiffs' efforts to force her out. The gist of this counterclaim, in other words, is that the plaintiffs attempted to evict her, without benefit of process, by violating the covenant of quiet enjoyment and subjecting her to escalating degrees of emotional trauma. In this case it is not practicable, nor from the perspective of sound judicial administration is it desirable, to attempt to sever the allegations constituting the breach of warranty of quiet enjoyment from those constituting the tort of intentional infliction of emotional distress. It was error to dismiss the emotional distress counterclaim.

So much of the judgment as dismissed Pelletier's counterclaims is reversed. The case is remanded for further proceedings on the counterclaims.

*So ordered.*