IN RE GUARDIANSHIP OF BENJAMIN BLAKENEY, CATHERINE
BLAKENEY AND SCHUYLER BLAKENEY, Appellees, v.
D. M. WYLAND, Guardian, Appellant.

**Statute of Limitations:** FRAUD OF GUARDIAN AS INTERRUPTION. A
guardian testified that on the sale of the wards' realty, notice
was served on them, and that later, on termination of the
guardianship, he made diligent search in order to pay over the
sum in his hands. The guardian knew the residence of his
wards when he became guardian, and one of them lived at
the same place during the guardianship. The wards testified
that neither knew of the guardianship or the existence of the
property, and, on receiving the information thereof from an-
other than the guardian, that they took prompt action to
recover the same. The guardian did not notify the court when
his wards became of age,. kept the funds in the bank to his
credit, and made no report whatever to the court for 12 years.
*Held*, sufficient to discredit the statements of the guardian that
he had made diligent search in an effort to pay the fund to
his wards, and to show fraud, preventing the running of limi-
tations.

ADMISSION OF DEBT BY GUARDIAN'S REPORT. Under Code, section
3456, providing that causes of action founded on contract are
revived by an admission in writing signed by the party to be
charged, an account filed in court by a guardian admitting the
receipt of money belonging to his wards, and giving reasons
why such money was not paid to the wards upon their major-
ity, was sufficient to interrupt the running of the statute.

*Not affected by subsequent plea of statute.* A subsequent plea of
3   the statute cannot relate back, and destroy the character of
such statement as an admission of indebtedness.

**Mingling of Ward's Funds:**   INTEREST.   Where a guardian was
guilty of breach of trust with respect to the guardianship
4   funds, and wrongfully mingled them with his own, a decree
charging him with interest upon the fund while in his hands
at 6 per cent., with annual rests, was not excessive.

*Appeal from Shelby District Court.*—HON. W. R. GREEN,
Judge.

FRIDAY, FEBRUARY 7, 1902.

THE history of this case is as follows: On the fifth of
February, 1884, in Shelby county, Iowa, L. M. Wyland was
appointed guardian of Benjamin, Catherine, and Schuyler
Blakeney, minor heirs of Susan Blakeney, deceased.
The minors were residents of Barry county, Mich.,
and the guardianship proceedings appear to have
been instituted for the purpose of conveying their fractional
interest in a tract of land in Shelby county. The first re-
port of the guardian which appears of record bears date
September 22, 1887, and acknowledges a balance in his
hands, after paying all expenses and claims up to that date,
of $434.45. No further report was made until November
20, 1899, when, in response to a citation from the court,
said guardian presented an accounting in writing, signed
by him, in which, after acknowledging the balance of
$434.45 in his hands on September 22, 1887, he adds,
"which sum I deposited in the Harlan Bank, of Harlan,
Iowa, to draw interest at six per cent. (6 per cent.) per
annum; and it remained there continuously until the bank
ceased to do business, in January, 1896, when it was trans-
ferred to my personal account with the Harlan State Bank,
which went into the hands of a receiver December 10, 1896.
The reason I did not pay over this money is that, after dili-
gent inquiry, I could not learn the whereabouts of my

wards, or either of them.  I have no money now with which
to pay, and submit this as my final report, with the request
that the court make such order as may seem just and
proper." To this report Benjamin and Catherine Blakeney
(Schuyler Blakeney having died) filed exceptions Novem-
ber 24, 1899, denying that the trust funds had ever been
deposited as such in the bank, but that the guardian had
mingled them with his own funds and converted them to
his private use, and asking that he be charged interest at 6
per cent., with annual rests.  December 9, 1899, the guard-
ian filed an amended report, claiming the benefit of the
statute of limitations, to which claim the wards responded,
alleging that they never had any knowledge that Wyland
was acting as their guardian or that he had any moneys be-
longing to them, and that he fraudulently concealed and
kept from them the knowledge of their rights in the prem-
ises until they discovered the same, about the time of the
citation above referred to.  They also plead the report filed
by him November 20, 1899, as a written acknowledgment of
the debt sufficient to take the case out of the statute of limi-
tations.  It should here be said that said wards arrived at
their majority as follows: Catherine, February 14, 1886;
Benjamin, June 24, 1887; and Schuyler, the —— day of
——, 1891.  Schuyler died April 12, 1891.  After hearing
the evidence offered by the wards,—the guardian produc-
ing none, except the records in the guardianship proceed-
ings, and his own testimony when called as a witness by the
other party,—the court found that said guardian was justly
accountable for the sum of $434.45, with interest thereon
at 6 per cent., with annual rests, amounting in all to $900.
This sum, less unpaid probate fees, if any, the court ordered
the guardian to pay over within 10 days,—one-third to Ben-
jamin Blakeney, one-third to Catherine Blakeney (now
Ferris), and one-third to the administrator of Schuyler
Blakeney, or, in event that there be no such administrator

to the clerk, for the benefit of said Schuyler's estate. From this order the guardian appeals.—*Affirmed.*

*Cullison & Robinson* for appellant.

*Thos. H. Smith* for appellees.

WEAVER, J.—As will be seen from the foregoing statement, the only resistance which the guardian makes to the demand for an accounting is based on the statute of limitations. Under the circumstances disclosed by the record, this plea will not avail. For this conclusion there are two very satisfactory reasons:

I. His wards resided in a distant state, but his statement that he made diligent search for them in order to pay over the funds, and failed to ascertain their residence, cannot be credited. He knew where they resided when he secured appointment as their guardian. He claims to have served notice upon them at their home, in Michigan, in the proceedings to sell their land. The father of the wards lived at the same place until his death, in 1896. The oldest ward has also lived there during the entire period from the inception of the guardianship to the present time. The slightest effort upon the part of the guardian would have put him in communication with these young people. They unite in testifying that they never knew of the appointment of the guardian, or that they had inherited any interest in land in Shelby county, until in 1896 one O. P. Wyland wrote a letter seeking a conveyance from them, to cure some defect in the record title. How they could have been ignorant of these facts, if notice of the sale proceedings was in fact served upon them, is not made clear; but the very fact that they did nothing to protect their rights until the letter was received, and that upon receiving such information they acted promptly, is evidence of the good faith of their statements. At any rate, there is

nothing to show that prior to 1896 any information was ever conveyed to them that there was money in Wyland's hands for their use or benefit. It was his plain duty, as soon as his wards reached their majority, to apprise the court of that fact, and to notify and settle with those to whom the money belonged. This he did not do. He left his wards in ignorance of their rights, made no report to the court for a period of 12 years, kept the money in the bank, and passed it to the credit of his private account,—an account which closed with a balance of over $5,000 on the wrong side. The relationship of guardian and ward is one of peculiar trust and confidence, and the guardian will be held to the strictest good faith in dealing with the ward or with his funds. The suppression or withholding from his wards of the fact of the existence of the moneys in his hands for their benefit must be treated as a fraud upon them, and prevents the running of the statute in his favor. *Hoyle v. Jones,* 35 Ga. 40 (89 Am. Dec. 273). This is true irrespective of the statutory provisions as to fraud and mistake. *District Tp. of Boomer v. French,* 40 Iowa, 601; *Wilder v. Secor,* 72 Iowa, 161.

II. The statute of limitations provides as follows (Code, section 3456): "Causes of action founded on contract are revived by an admission in writing signed by the party to be charged, that the debt is unpaid." Aplying this rule to the facts of the case at bar, we hold that the written statement or account signed by Wyland, and filed in the district court November 20, 1899, is an admission that the debt is unpaid, and revives the right of action, even if otherwise held to be barred. He there states, in express terms, that he received the money, that he placed it to his own account in the bank, and that the bank has failed, and gives the alleged reasons why the money has not been paid over. This paper was signed and presented by him as an accounting, and it was not until after the Blakeneys appeared to that report, and sought to have him

charged with interest, that by an amendment he raises the question of the statute of limitations. It would be inequitable and unjust to permit this plea to relate back to the original admission and rob it of its legitimate effect, thereby permitting the guardian to escape the payment of a just debt, which he does not pretend to have discharged. It is suggested that the claim of the wards is not founded on contract, within the meaning of the statute above quoted, but we do not regard the objection as well taken. The guardian's principal undertaking is to safely care for the trust funds coming into his hands, and to account therefor to the ward, or to the court for the ward's benefit, and an action or proceeding to enforce that duty is founded on a contract of the most solemn nature.

III. Objection is also made that the amount found by the district court to be due from the appellant is excessive. The amount so assessed was found by taking the sum which appellant's report showed was on hand September 22, 1887, and adding interest thereto at 6 per cent., with annual rests. In view of the fact that appellant did not do his full duty in notifying his wards of their right to the moneys in his hands, and that he wrongfully mingled the trust funds with his own, we think the rule applied by the court below is right, and the judgment is AFFIRMED.