# HENRY KLEMME AND ANOTHER v. H. R. LONG.[1]

September 11, 1931.

No. 27,966.

[1]Reported in 237 N. W. 882.

*Brown, Somsen & Sawyer* and *Sawyer, Lord & Munck,* for appellants.

*Leach & Leach* and *Lee, Steinberg & Walsh,* for respondent.

DIBELL, J.

Action at law to recover damages for fraud and deceit. There was a verdict for the plaintiffs for $7,500. The defendant moved in the alternative for judgment notwithstanding the verdict or a new trial. The motion for judgment was granted. The plaintiffs appeal from the judgment.

On October 2, 1919, H. J. Edison entered into a contract for the sale of a quarter section of land in Dodge county to one Sievert, who was plaintiffs' son-in-law. Edison was the owner of the equitable title under a contract of sale from one Koranda, the owner of the legal title. Sievert paid Edison $2,000 cash, was to assume a $10,000 mortgage, give a purchase money mortgage for $14,000, and pay $4,400 on March 1, 1920, when the sale was to be closed and possession was to be taken. The defendant was the agent of Edison in making the sale. The total purchase price, including the assumed mortgage of $10,000, was $30,400. Long and his associates were to have a liberal commission if the sale was concluded. Long's share of it was one-half.

Sievert was immediately dissatisfied with his purchase and endeavored to rid himself of further obligation under it. Long was displeased with Sievert's attitude. He took up the matter with Klemme. It was finally arranged that Klemme would take the land at the price at which Sievert had contracted to take it. Sievert, so far as appears, lost his $2,000. On January 17, 1920, he assigned the contract to his father-in-law. On February 10, 1920, Koranda deeded to Klemme, and Klemme and wife gave to Edison a mortgage of $14,000, which represented the unpaid pur-

chase price. Klemme paid the $4,400 when the deal was closed in February, 1920.

Klemme paid the annual instalments of interest of $840 each on the $14,000 mortgage which became due on the first day of March in 1921, 1922, 1923, and 1924. He took possession of the land and occupied it through a third person. He did not pay the interest which became due March 1, 1925. Edison commenced suit against him in the United States district court in Iowa, in March, 1925. On April 30, 1925, the suit was settled by the payment by Klemme of $6,500 to Edison and the deeding of the land to Edison, who assumed the $10,000 mortgage.

It is the claim of the plaintiffs that Long agreed to have the mortgage so drawn that they would not be liable personally and the mortgage would be made out of the land. There is some talk in the briefs about a misrepresentation of the Minnesota law, and the rule is invoked that the misrepresentation of foreign law is a misrepresentation of fact. This may be conceded. The rule is without application. No particular state law was important. The matter of limiting liability to a foreclosure of the mortgage was one of contract, and the result could be reached easily. Von Campe v. City of Chicago, 140 Ill. 361, 29 N. E. 892; Seieroe v. First Nat. Bank, 50 Neb. 612, 70 N. W. 220; Elmore v. Higgins, 20 Iowa, 250; Allison v. Hollembeak, 138 Iowa, 479, 114 N. W. 1059; note, 17 A. L. R. 717. In Wood v. Johnson, 117 Minn. 267, 135 N. W. 746, we sustained an Iowa contract intended to have that effect.

The real grievance claimed is that Long agreed to fix the papers so that Klemme and his wife would not be liable personally and only the land would be pledged; that he represented to them that he had done so when they signed the mortgage; and that they relied upon his statement and signed. Perhaps it was done hurriedly. They did not read it. The following is a fair statement of Klemme's testimony repeated in forms not more favorable:

Q. "What was said between you and Mr. Long, if anything, on the proposition, whether they could do any more than take the land away, whether they could hold you and your wife responsible?

*    *    *    *    *

A. "Well, just like I say, he is going to see that them papers be fixed, it wouldn't come on me, just stand on the land, hold the land, where it was given to, that mortgage.

Q. "So all you would lose, if you let it go by was the land?

A. "That the mortgage was given to—

＊   ＊   ＊   ＊   ＊

Q. "Was that talk that you have just told us about that he would have those papers fixed so that they couldn't come back on to you or your wife, was that talk had between you and Mr. Long before your wife came in?

A. "Yes, the morning I brought my wife in, he says, 'Mrs. Klemme,' he says, 'Now, everything is ready here to sign, and me and Mr. Klemme got everything talked and laid out.' He says, 'You ain't holding yourself anyway or noway.' You sign this and it will be all right.' He says, 'It will never hurt you or any of you.'

Q. "And the papers he was talking about was the note and mortgage, was it?

A. "Yes.

Q. "And did you and your wife then sign the note and mortgage?

A. "Yes.

Q. "Did you or your wife read over that mortgage or note at all?

A. "Well, it would not do me any good. I couldn't read it.

Q. "Did you read them?

A. "No, I did not.

Q. "Did your wife read them?

A. "No, she did not.

Q. "And what was done with the note and mortgage? Were they left there with Long to be sent back, or did you take them with you?

A. "No, he took them."

There was some talk of Klemme and Long joining in the purchase, and further of Long helping him. Finally another son-in-law of Klemme, at the latter's suggestion, undertook to occupy and work the land, and Klemme bought it himself. There is nothing upon which the plaintiffs can base a claim of actionable fraud ex-

cept Long's agreement that he would fix the mortgage so that Klemme and his wife would not be personally liable, perhaps not intending at the time to do it, and in any event closing the deal without doing it and without informing Klemme that he was personally liable and falsely representing the contrary. The evidence is far from satisfactory as proof of actual fraud. We do not omit to note that Klemme was himself a man of practical affairs. His schooling was not beyond the eighth grade. He sometimes stumbled in his speech. But he knew how to do business. He was a native of Germany and came to this country when 16 or 17. He was 66 years of age at the time of the trial. He engaged in stock farming and accumulated property. He had business experience in buying and selling land. He borrowed money and transacted business at the banks. He was a stock farmer and stock buyer. He was a school director in his school district in Iowa for two or three years. He was a township trustee for 12 or 14 years. For several years he was a director of a national bank. He had bought other farms in Minnesota; he had bought some in Iowa. He was successful in accumulating property and was after more. When he was sued in March, 1925, by Edison, on the $14,000 note, and settled by giving $6,500 and deeding the land, his chief defense was that, without it so providing in the note, the maturity of the principal could not be accelerated. He made no claim that he was not personally liable, though in making the deal Long was Edison's agent. But, assuming that there was fraud, there was no fiduciary or confidential relation between Klemme and Long. They were friends. Klemme had done Long favors, and Long had done him favors. They were dealing at arm's length in the transaction involved here. Long was the agent of Edison. He was not Klemme's agent. Klemme understood the way real estate business is conducted. Once he had been in Minnesota with Long as his agent to trade for a farm in the western part of the state. When on this mission he slipped away from Long and bought a farm, at the instance of the agent of the seller, so that Long could not claim a commission from the seller. He was hungry for land, and Long was greedy for commissions.

The case is not at all like Picha v. Central Met. Bank, 161 Minn. 211, 201 N. W. 315, 203 N. W. 617. If Klemme and Long had bought the land in partnership, Long could not have kept his commissions. But it was not bought in partnership. That thought was abandoned. Negotiating for a partnership did not make them fiduciaries. Walker v. Patterson, 166 Minn. 215, 208 N. W. 3, 7. Neither did Long; by fraud, prevent the plaintiffs from discovering the facts upon which they now base fraud. These matters are important upon the Iowa statute of limitations, which we now consider.

The cause of action for fraud and deceit arose in Iowa, where the parties lived. It was a cause of action in tort, not on contract. It had no relation to Minnesota except from the incidental and unimportant fact that the misrepresentation was as to the character and effect of a mortgage of Minnesota land. The defendant pleaded and proved the Iowa statute of limitations. The statute of Iowa, Code of Iowa, 1924, § 11007 (5) provides for the limitation of actions in cases like the one before us as follows:

"Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years."

Code of Iowa, 1924, § 11010 (Code of Iowa, 1897, § 3448) provides:

"In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved."

Referring to the last section, Chief Justice Ladd, in Birks v. McNeill, 185 Iowa, 1123, 1136, 170 N. W. 485, 490, said:

"The fraud contemplated in this section has uniformly been held to be that 'heretofore solely cognizable in a court of chancery.' Phoenix Ins. Co. v. Dankwardt, 47 Iowa, 432. If the action is at law, or the remedy is concurrent, the section has no application.

McGinnis v. Hunt, 47 Iowa, 668; Carrier v. Chicago, R. I. & P. R. Co. 79 Iowa, 80, 44 N. W. 203, 6 L. R. A. 799; McKay v. McCarthy, 146 Iowa, 546, 123 N. W. 755, 34 L.R.A.(N.S.) 911. If, however, the party against whom the cause of action exists, by fraud or fraudulent concealment prevents such other from obtaining knowledge thereof, the statute will commence to run from the time the right of action is discovered, or might, in the exercise of reasonable diligence, be discovered. District Twp. of Boomer v. French, 40 Iowa, 601; Faust v. Hosford, 119 Iowa, 97, 93 N. W. 58; Caffee v. Berkley, 141 Iowa, 344, 118 N. W. 267."

And in the earlier case of Faust v. Hosford, 119 Iowa, 97, 99, 93 N. W. 58, 59, Mr. Justice Deemer said:

"The gist of plaintiff's action is fraud committed upon her by her agent, and in such cases the statute does not begin to run until actual discovery of the fraud, or until such time as, in the exercise of ordinary care and diligence, the fraud might have been discovered. On account of the fiduciary relations existing between defendant and plaintiff, and the alleged fraud, this action was heretofore solely cognizable in a court of equity; hence the statute above referred to applies, and there was no error in the rulings so far complained of. Blakeney v. Wyland, 115 Iowa, 607, 89 N. W. 16. Aside from this, the action is not barred, because of defendant's fraudulent concealment of the facts. Boomer Dist. Tp. v. French, 40 Iowa, 601; Wilder v. Secor, 72 Iowa, 161, 33 N. W. 448, 2 A. S. R. 236. In such a case the statute begins to run from the time the cause of action is discovered, or might by the use of reasonable diligence have been discovered."

Under the Iowa law a cause of action for fraud or deceit is barred in five years. But where there is a confidential or fiduciary relation between the parties the action is not barred until discovery, or in reason it ought to be discovered, nor when the one committing the fraud, by fraud or fraudulent concealment, prevents the defrauded party from ascertaining the facts. This is the decision law of Iowa. It is comprehensively stated in the two

quotations above given, and in Wagner v. Standard S. T. Co. 194 Iowa, 1330, 1332, 191 N. W. 314, where Mr. Justice De Graff said:

"Under early chancery jurisprudence and practice a certain class of rights with appropriate remedies were recognized that occupied a sort of legal no man's land in order to redress injuries outside the pale of judicial cognizance in law actions. In recognition of this form of relief our legislature enacted the following statute: 'In actions for relief on the ground of fraud or mistake, * * * the cause of action shall not be deemed to have accrued until the fraud, mistake * * * complained of shall have been discovered by the party aggrieved.' Code Section 3448.

"The true test of the applicability of this statute to pleaded facts is whether a court of equity before the enactment of the statute had exclusive jurisdiction to grant the relief prayed. Higgins v. Mendenhall, 51 Iowa, 135; McKay v. McCarthy, 146 Iowa, 546, 123 N. W. 755, 34 L.R.A.(N.S.) 911; Dickinson v. Stevenson, 142 Iowa, 567, 120 N. W. 324; Fleener v. Nugent, 185 Iowa, 701, 171 N. W. 3; Tilton v. Bader, 181 Iowa, 473, 164 N. W. 871; Birks v. McNeill, 185 Iowa, 1123, 170 N. W. 485.

"Waiving for the moment the element of fiduciary relationship between plaintiff and defendants there can be no question that the instant action is founded upon fraud and deceit, and at most the relief prayed is concurrently cognizable at law and in equity. Five years bars the action and taking into consideration the date of the transaction and the commencement of this suit the action is barred."

And in Pullan v. Struthers, 201 Iowa, 1179, 1180, 207 N. W. 235, 236, where Mr. Justice Vermilion said:

"The action was commenced more than five years after the purchase of the stock. It was, therefore, barred by the statute of limitations, Section 3447, Code of 1897 (Section 11007, Code of 1924), if the statute began to run from the date of the purchase of the stock.

"There is no claim that Section 3448, Code of 1897 (Section 11010, Code of 1924), is applicable. That section applies only to actions of which, before the enactment of the statute, chancery had exclusive jurisdiction. McGinnis v. Hunt, 47 Iowa, 668; McKay v. McCarthy, 146 Iowa, 546, 123 N. W. 755, 34 L.R.A.(N.S.) 911; Birks v. McNeill, 185 Iowa, 1123, 170 N. W. 485.

"But, entirely aside from this statutory provision, it is well settled that, where a party against whom a cause of action exists in favor of another, by fraud or actual fraudulent concealment prevents such other party from obtaining knowledge thereof, the statute of limitations commences to run only from the time the right of action was discovered, or might by the use of diligence have been discovered. This doctrine was first announced in this state in the case of District Township of Boomer v. French, 40 Iowa, 601, which was an action to recover from a public officer money received by him and appropriated to his own use, and where, by fictitious entries in his books and fraudulent representations and concealments, the defendant kept from plaintiff's knowledge the fact of his receipt of the money. The rule was followed in Findley v. Stewart, 46 Iowa, 655, which was an action to recover real property by the heirs of a grantee, where the grantor had obtained possession of his unrecorded deed and fraudulently destroyed it, and concealed this fact. It was applied to an action to recover from a justice of the peace money collected by him on a judgment, where he had reported that nothing had been collected. Bradford v. McCormick, 71 Iowa, 129, 32 N. W. 93. The rule has been applied, where a fiduciary relation existed, to fraudulent concealment by mere silence. Wilder v. Secor, Burnop & Law, 72 Iowa, 161, 33 N. W. 448, 2 A. S. R. 236; Blakeney v. Wyland, 115 Iowa, 607, 89 N. W. 16; and Cress v. Ivens, 155 Iowa, 17, 134 N. W. 869; Faust v. Hosford, 119 Iowa, 97, 93 N. W. 58. In Mullen v. Callanan, 167 Iowa, 367, 149 N. W. 516, by false and fraudulent representations that plaintiff acquired no title under a conveyance of land to her, she was induced to reconvey, and subsequently repurchased the land at an increased price. In an action to set aside her convey-

ance and for an accounting, we held that the action was not barred, because the cause thereof was deliberately concealed from plaintiff, and she had no notice of facts putting her upon inquiry."

These quotations indicate the definite holdings of the Iowa supreme court. In the absence of a fiduciary or confidential relation or a fraudulent concealment of the facts, the cause of action is barred by the Iowa five-year limitation. And so it was here.

■ The statute of Minnesota provides that when a cause of action arises out of the state and by the laws of the place where it arose an action thereon is barred by lapse of time, such action cannot be maintained in this state unless the plaintiff be a citizen of the state who has owned the cause of action since it accrued. G. S. 1923 (2 Mason, 1927) § 9201. None of the parties are residents of Minnesota. The cause of action arose in Iowa. If barred there by lapse of time it is barred here. Burkhardt v. Northern States Power Co. 180 Minn. 560, 231 N. W. 239, and cases cited; Moe v. Shaffer, 150 Minn. 114, 184 N. W. 785, 18 A. L. R. 1194, and cases cited; 4 Dunnell, Minn. Dig. (2 ed.) § 5612. Therefore it is barred.

■ The statute is constitutional. Canadian N. Ry. Co. v. Eggen, 252 U. S. 553, 40 S. Ct. 402, 64 L. ed. 713. The case of Power Mfg. Co. v. Saunders, 274 U. S. 490, 47 S. Ct. 678, 71 L. ed. 1165, does not say the contrary.

Judgment affirmed.