NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-17

KEVIN CONCANNON & another[1]

vs.

DOROTHY SMITH[2] & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs brought this action seeking equitable relief and monetary damages arising out of the breach by Dorothy and Edward Smith[4] of a purchase and sales agreement for a property in Hull (agreement).  Following a jury-waived trial, a Superior Court judge entered a judgment awarding the plaintiffs specific performance of the agreement, and the defendants appealed.  We affirm.

---

[1] Laura Sorgi.

[2] Individually and as personal representative of the estate of Edward Smith.

[3] Robert Machinski.

[4] For the sake of clarity, we refer to the Smiths by their first names where necessary.  Edward died during the pendency of this action.

Background. "We recite the facts that the judge could have found, . . . reserving some for later discussion." Spinosa v. Tufts, 98 Mass. App. Ct. 1, 3 (2020). Dorothy and Edward married in 1980. Before they were married, Dorothy had purchased a home at 51 Randolph Street in Abington (Randolph Street property) and lived there with her four children from a prior marriage, one of whom is defendant Robert Machinski. In 1984, the Smiths purchased a home together at 23 Meade Avenue in Hull (Meade Avenue property). The Smiths kept the Randolph Street property until the late 2010s, but began using the Meade Avenue property as their primary residence shortly after they purchased it. Machinski lived with the Smiths at the Meade Avenue property from 1984 (the year after he graduated from high school) until 1992, when he moved out of state.

While living at the Meade Avenue property, the Smiths became friendly with their neighbor, Eugene Allen, and Allen's wife, Frances. The Allens lived next door to the Smiths in a single-family home at 52 Valley Beach Avenue (the property). After Frances passed away in 1997, the Smiths provided company and assistance to Allen, who was then in his nineties and did not have any family close by. Among other things, the Smiths helped Allen write checks to pay his bills, made him meals, took him to the grocery store and medical appointments, and cared for him when he was ill.

2

In July 1999, Allen conveyed the three parcels that comprise the property to Machinski via two deeds in consideration of $1. Although Machinski was by then living in California, the deeds identified the Smiths' Meade Avenue property as Machinski's address. One deed, in which Allen reserved a life estate, was for the parcel known as the Lois E. James parcel (James parcel), which is the portion of the property that is next door to the Meade Avenue property and contains a single-family home. The second deed was for the parcels known as parcel P and parcel G. Parcel P is a small triangular parcel that abuts Valley Beach Road and is contiguous with the James parcel. Parcel G is a waterfront parcel consisting entirely of rocks that slope down into the ocean and located directly across the street from the other two parcels.

At the end of his life, Allen was in a nursing home, where the Smiths visited him regularly. When Allen passed away in November 2002, Edward took care of the funeral arrangements. Allen's death certificate identified Edward as Allen's "guardian."

Following Allen's death, Machinski deeded parcels G and P to the Smiths. Though the James parcel was not deeded to the Smiths, they began to use the single-family home on the James parcel as a rental around the same time. The Smiths found and selected tenants, collected all rental income, performed

3

necessary repairs and maintenance, and paid taxes on the property. In 2012, the Smiths took out a $380,620 mortgage secured by the property. In the mortgage application, Edward stated that he had acquired the property in 1990 for $300,000, and that he was seeking to refinance an existing $377,208.81 lien. The Smiths never discussed the way they managed the property with Machinski or told him about their decision to mortgage it.

In April 2020, the Smiths hired a real estate broker to market the property, representing that they owned and had authority to sell all three parcels. Together with their broker, the Smiths, who had enjoyed long careers as real estate appraisers,[5] agreed to list the property for $650,000. On June 26, 2020, the Smiths and the plaintiffs executed the purchase and sales agreement, agreeing to a sales price of $620,000 and a closing date of July 24, 2020. The agreement described the property as "the land and building(s) thereon known and numbered as 52 Valley Beach Avenue, Hull, MA," and required the Smiths to "use reasonable efforts (not to exceed $2,500 exclusive of voluntary liens and mortgages) to remove any defect in title."

---

[5] Edward worked in the business of real estate investments and appraisals for over twenty-five years, buying and selling real estate in Alabama, Florida, New Hampshire, and Massachusetts before retiring in the early to mid-2010s. Dorothy had also been a real estate appraiser at one time but retired before Edward.

4

In an "escape clause," the agreement further provided that if the Smiths failed to timely

> "remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, . . . then, any payments made under [the] agreement shall be forthwith refunded and all other obligations of all parties hereto shall cease and [the] agreement shall be void without recourse to the parties hereto."

During the title review process, it came to light that title to the James parcel was in Machinski's name. Edward explained to his broker that he and Dorothy had "inherited" the property from Allen but asked Allen to put the deeds in Machinski's name for "tax purposes." Edward similarly told plaintiff Kevin Concannon that he "ha[d] all the paperwork saying [he's] the owner" of the property and was in the process of trying to find it. In order to resolve the title issue, the closing date was repeatedly postponed, eventually until September 23, 2020.

Machinski learned of the title issue in late August 2020, and was purportedly "shocked" when he found out that the Smiths were "going to let [the property] go" for $620,000. Machinski informed the plaintiffs' attorney that he would only convey the James parcel if the sales price of the property was increased to $1.1 million. Shortly thereafter, Machinski moved from California into the house on the James parcel and began making improvements to it.

5

On September 23, 2020, the plaintiffs appeared at the closing, ready to pay the agreed-on purchase price. The Smiths did not attend.

The plaintiffs subsequently filed this action against the defendants, alleging that Machinski was a straw and agent of the Smiths, and therefore, the Smiths were required to direct Machinski to convey the James parcel back to them and he was required to do so, so that the sale could be completed. The plaintiffs sought specific performance and asserted claims for breach of the implied covenant of good faith and fair dealing, fraud, constructive trust, resulting trust, intentional misrepresentation, negligent misrepresentation, and breach of contract.

In January 2023, a jury-waived trial was held pursuant to Rule 20 of the Rules of the Superior Court (2018) (rule 20). Over two days, the judge heard testimony from Dorothy, Machinski, Concannon, the Smiths' broker, and the Smiths' former real estate attorney. Although Edward had passed away in December 2021, his deposition transcript was admitted as an exhibit.[6]

Following the presentation of evidence, the judge answered special questions and entered judgment in the plaintiffs' favor

---

[6] Dorothy's and Machinski's deposition transcripts were also admitted in evidence.

on their claims for specific performance, breach of the implied covenant of good faith and fair dealing, constructive trust, and breach of contract.  The plaintiffs' remaining claims were dismissed.  The judge found, among other things, that Allen had conveyed the James parcel to Machinski as an agent for the Smiths and that it was necessary to impose a constructive trust to avoid the unjust enrichment of Machinski.  The judge ordered Machinski to convey the disputed parcel to Dorothy and Dorothy to convey it to the plaintiffs.

Discussion.  1.  Standard of review.  "The standard of review relating to a jury-waived proceeding is well established -- '[t]he findings of fact of the judge are accepted unless they are clearly erroneous' and '[w]e review the judge's legal conclusions de novo.'"  Cavadi v. DeYeso, 458 Mass. 615, 624 (2011), quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569 (2010).  Where, as here, the parties not only waived their right to a jury trial but, pursuant to rule 20, "any arguments that required or depended on detailed factual findings . . ., appellate review is conducted according to the same standard as that applied to a judgment entered following a jury verdict."  K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 344 (2023).  "We therefore review to determine whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a

7

reasonable inference could be drawn in favor of the [prevailing party]" (quotations and citation omitted).  Id.

2.  Agency.  The defendants challenge the judge's conclusion that Machinski held title to the James parcel as the Smiths' agent, asserting, among other things, that the plaintiffs failed to proffer any evidence of agency.  This argument is unpersuasive.  As will be explained below, the circumstances surrounding the July 1999 conveyance of the property, and the defendants' conduct over the years that followed, strongly support the judge's conclusion that Machinski held title for the Smiths' benefit and subject to their control. See Brown-Forman Corp. v. Alcoholic Beverages Control Comm'n, 65 Mass. App. Ct. 498, 506 (2006) ("An agency relationship is created when there is mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control" [citation omitted]).

a.  Circumstances of the conveyance.  Machinski's testimony regarding the circumstances of the July 1999 conveyance was vague and contradictory.  During his deposition, when asked about the conversations he had with Allen about deeding him the property, Machinski responded that he did not recall much other than that Allen's "health was ailing, and he wanted to deed the property to me."  Later at trial, he claimed Allen deeded him

8

the property out of gratitude, asking him to "look out for the property and use it with the family." However, at the time of the conveyance, Machinski had been living out of state for approximately seven years, and by his own admission, saw Allen infrequently.[7] The Smiths, in contrast, continued to live next door to Allen and were actively involved in his care to the point that Allen's death certificate listed Edward as his "guardian." Notably, the 1999 deeds even identify the grantee's address as the Smiths' Meade Avenue property rather than Machinski's California residence.

b. Financial considerations. At the time of the conveyance, Dorothy was in the middle of Chapter 13 bankruptcy proceedings, providing an incentive to avoid taking title in her own name so the property would not become part of the bankruptcy estate. See Harris v. Viegelahn, 575 U.S. 510, 514 (2015) (under Chapter 13, "[the] estate from which creditors may be paid includes both the debtor's property at the time of [the debtor's] bankruptcy petition, and any wages and property acquired after filing"). See also 11 U.S.C. § 1306(a)(1). The broker testified that Edward too wanted to avoid putting the

_____

[7] Despite his deposition testimony that he saw Allen infrequently after moving out of state, Machinski submitted an affidavit in connection with an earlier motion to dismiss asserting that he was Allen's "surrogate caretaker" after the death of Allen's wife in 1997.

property in his name, for unspecified "tax purposes." These considerations align with the Smiths' prior conduct with respect to other properties.

In the early 1990s, before filing multiple bankruptcy petitions, the Smiths transferred the Meade Avenue and Randolph Street properties to realty trusts in which Machinski and Dorothy's other children served as trustees.[8] Although the legal ownership of those properties changed, the Smiths continued to use the Meade Avenue property as their home address, and the Randolph Street property appears to have been treated as part of their bankruptcy estates,[9] indicating that the transfer of legal title alone did not obscure the Smiths' financial interest and control.

The Smiths' pattern of retaining control of property while transferring legal title bolsters the inference that they used Machinski as a nominal title holder to protect the property at a time of increased financial vulnerability. This inference is reinforced by the evidence that parcels P and G, along with the

---

[8] Machinski testified that he had did not "have any recollection" of being a trustee of the realty trusts or ever having seen the deeds transferring those properties back to the Smiths.

[9] Edward and Dorothy jointly filed a Chapter 7 bankruptcy petition in 1992 and filed separate Chapter 13 bankruptcy petitions in 1995 and 1997. The dockets of the Chapter 13 proceedings reflect efforts by creditors to collect on claims secured by the Randolph Street property.

Meade Avenue and Randolph Street properties, were all deeded back to the Smiths for nominal consideration a little over a year after a bankruptcy court judge granted Dorothy a discharge in April 2002.

c. Subsequent conduct. The Smiths testified that they thought Machinski had deeded them the entire property in 2003, and from then until the title issue arose in 2020, they had believed that the property was theirs. Consistent with that belief, the Smiths managed it, paid all expenses, kept rental proceeds, and pledged it as security for a mortgage, all without input from Machinski. Machiniski, who resided in California until he learned of the title issue in August 2020, testified that if the plaintiffs had agreed to his offer to sell the property for $1.1 million, he would have "given [his parents] all the money." These statements and behaviors are consistent with an agency relationship. See Bellemare v. Clermont, 69 Mass. App. Ct. 566, 571, 575 (2007) (defendant titleholder who "never derived any benefit from the subject property, never received any compensation or income from the property, and never exercised any management or control of the property," was not owner but agent "for the principals' convenience"); Restatement (Second) of Agency § 14B comment f (1958) ("Where a person transfers property to another, the question whether there is an agency depends upon the amount of control agreed to be exercised

11

by the person for whose benefit the transferee is to act, or, in doubtful situations, upon the amount of control in fact exercised").

d. Testimony regarding parcels G and P. Machinski's testimony about deeding parcels G and P to the Smiths further underscores his role as an agent for the Smiths. Despite his assertion that he deeded the Smiths these parcels to alleviate their concerns about potential development obstructing their view, Dorothy disclaimed such a concern, testifying that she did not recall being worried about development, even acknowledging at one point that parcel G was "[n]ot buildable." If the Smiths feared development blocking their view, it is also unclear why Machinski would have conveyed both parcels rather than just the parcel across the street. The most plausible explanation for the conveyance of parcels G and P is that Machinski was acting at the direction of the Smiths when he deeded them those parcels, consistent with an agency relationship in which he took title to the property for the Smiths' benefit.

Lastly, it is worth noting that Machinski's failure to speak up until August 2020, despite clear notice that the property was being marketed for sale,[10] suggests that he did not

---

[10] Although Machinski denied having noticed it, a "for sale" sign, visible from the Smiths' Meade Avenue home next door, was in front of the property during a July 2020 visit to his parents' Meade Avenue property.

12

view himself as the rightful owner until he learned the James parcel was still in his name and realized he could leverage his legal title to interfere with the sale and increase the purchase price by $480,000.

Based on the foregoing evidence, the judge's finding that Machinski held title to the James parcel as the Smiths' agent was not clearly erroneous. See T.D. Downing Co. v. Shawmut Corp. of Boston, 245 Mass. 106, 113 (1923) (principal-agent relationship "may arise wholly by implication from the conduct of the parties and the circumstances of the particular case"); Shear v. Gabovitch, 43 Mass. App. Ct. 650, 670 (1997) ("The existence of an agency relationship is ordinarily a question of fact, not to be reversed unless clearly erroneous").

3. Contract claims. The agreement required the Smiths to "use reasonable efforts (not to exceed $2,500 exclusive of voluntary liens and mortgages) to remove any defect in title." The trial judge reasonably concluded that the Smiths' actions not only failed to satisfy this obligation but breached the implied covenant of good faith and fair dealing.

During her deposition, Dorothy testified that she had no control over what Machinski did with the property and was uncertain whether she could legally compel him to deed it to her. Had she taken any steps to explore the legal options available to her, Dorothy would have learned that an agent with

13

title to land must surrender it upon demand of the principal or termination of the agency. Restatement (Second) of Agency § 422. See Restatement (Second) of Agency § 14B ("One who has title to property which he agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency"). See also Gagnon v. Coombs, 39 Mass. App. Ct. 144, 155 (1995) ("it is the agent's duty to obey the will of the principal, to respond to the principal's wishes, and not to act contrary to the principal's directions").

At trial, Dorothy testified that she and Edward had in fact asked Machinski to convey the James parcel to them, but he refused. However, the seriousness of any such request is undermined by Edward's testimony that Machinski was "his own man" and he could not make him do anything. When asked whether he had "attempted to ask" or "make" Machinski deed the James parcel to the Smiths, Edward responded:

> "I am laughing because that is -- to me . . . that is such an absurd question. [Machinski] has been -- he thinks and probably is smarter than everybody in the room. There is no way that I was going to convince him to do what he didn't want to do and certainly I would not tell him to do that. It is not my place to tell my children what they should do."

The record thus provides an ample basis on which to conclude that rather than making a serious effort to have Machinski convey title, or exploring legal remedies within the $2,500 threshold set forth in the agreement (which could include, for

14

example, cooperating with the plaintiffs to bring an action against Machinski), the Smiths simply disclaimed responsibility, allowing Machinski to take possession and claiming that they were mistaken about their ownership interest. In doing so, the Smiths attempted to convert Machinski's legal title into a beneficial interest -- encumbering the very title that they had already agreed to convey to the plaintiffs. See J.J. Newberry Co. v. Shannon, 268 Mass. 116, 119 (1929) (defendant "could not without violating his contract bring into existence a right in a third person incumbering the title which he had agreed to convey").

The Smiths' conduct, viewed together with Machinski's testimony that he believed the $620,000 sales price undervalued the property by hundreds of thousands of dollars, supports an inference that the defendants sought to take advantage of the situation and sabotage the sale to secure a higher price, and in turn, the judge's finding that the Smiths failed to act in good faith and use reasonable efforts to fulfill their obligations under the agreement. This conclusion is strengthened by Edward's candid admission that he did not believe he owed the plaintiffs a duty of good faith -- a striking repudiation of the covenant of good faith and fair dealing that is implicit in every contract under Massachusetts law. See Robert & Ardis James Found. v. Meyers, 474 Mass. 181, 188 (2016). For these

15

reasons, the judge did not abuse his discretion in finding that the Smiths had breached the purchase and sale agreement as well as the implied covenant of good faith and fair dealing.

The escape clause of the agreement, stating that the Smiths' failure to timely "remove any defects in title" would void the parties' obligations, does not absolve the Smiths of liability. It is well established that such escape clauses do not allow sellers to avoid liability for failure to make reasonable efforts to cure title defects. See Durkin v. Ferreira, 21 Mass. App. Ct. 771, 774-776 (1986). More particularly, where a party agrees to remove defects in title in exchange for consideration, that party cannot later "set up [those] defects as a ground for putting an end to the obligations of the contract." J.J. Newberry Co., 268 Mass. at 118. See Hastings v. Gay, 55 Mass. App. Ct. 157, 162 (2002) (escape clause "will not apply to void an agreement where the seller's inability to convey good and clear title was the result of his own fault or collusion").

Accordingly, under the circumstances, neither the plaintiffs' lack of direct involvement in the agency relationship between Machinski and the Smiths nor the fact that Machinski was not a party to the agreement precluded the trial judge from ordering Machinski to convey the James parcel to Dorothy, and in turn, ordering Dorothy to convey the property to

16

the plaintiffs.  See <u>Merrill</u> v. <u>Ewen</u>, 103 Mass. App. Ct. 37, 45-46 (2023) ("Equity generally regards as done that which ought to be done" [citation omitted]).  Cf. <u>Forte</u> v. <u>Caruso</u>, 336 Mass. 476, 481 (1957) ("Specific performance may be decreed notwithstanding the conveyance of the land to one who was not a bona fide purchaser"); <u>Dooley</u> v. <u>Merrill</u>, 216 Mass. 500, 500 (1914) (equitable obligation to convey land "will be enforced not only against the holder of the legal title, but against others taking an interest in the legal title with notice, and adequate remedy will be afforded to carry out this principle"); <u>Kelly</u> v. <u>Cucchiella</u>, 26 Mass. App. Ct. 983, 983 (1988) (straw purchaser bound by actions of true owner); <u>Young</u> v. <u>Reed</u>, 6 Mass. App. Ct. 18, 21-22 (1978) (seller's equitable obligation to convey property to plaintiffs enforceable against third party who took title with knowledge of seller's prior agreement to convey property to plaintiffs); <u>Morris</u> v. <u>Costa</u>, 174 Conn. 592, 601 (1978) (interest of parties holding bare legal title to property "cannot prevent the doing of complete justice as '[e]quity can always look behind the technical legal title if

17

necessary to work out under its principles the rights of the parties'" [citation omitted]).[11]

Judgment affirmed.

By the Court (Henry,
  Desmond, &
  Englander, JJ.[12]),

Clerk

Entered:  June 25, 2025.

---

[11] We need not address the defendants' challenge to the judge's findings on the constructive trust and unjust enrichment claims since we have determined on independent grounds that the judgment awarding specific performance on those counts was appropriate.  See Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).

[12] The panelists are listed in order of seniority.